# FLORENCE L. GATY, Appellant, v. UNITED RAIL-WAYS CO. of ST. LOUIS.

### In Banc, March 5, 1921.

1. **NEW TRIAL: Newly Discovered Evidence.** To justify the granting of a new trial on the ground of newly discovered evidence, such evidence must be not only material but of such character and weight that, upon another trial, it would probably produce a different result.

2. ———: ———: **Discretion of Trial Court.** The trial court has a large discretion in the matter of granting new trials on the ground of newly discovered evidence, the sound exercise of which is to be encouraged; but this discretion is subject to review by the appellate court on appeal.

3. ———: ———: ———: **Evidence in This Case.** In this case the newly discovered evidence upon the ground of which the trial court granted a new trial is examined and analyzed, and it being in the opinion of the Supreme Court highly improbable that it would have changed the result, the trial court's action in granting a new trial on that ground is disapproved.

4. **NEGLIGENCE: Pleading: Evidence: Conclusion of Expert.** Where the petition in a suit for personal injuries alleged that plaintiff's "right leg and knee and knee joint and the bones, muscles and ligaments thereof were greatly strained, bruised, torn, and injured and her said knee and joint thereof was made stiff and immobile and is permanently injured" and that as a result plaintiff suffered great bodily pain, etc., and defendant on cross-examination of plaintiff's medical witnesses tried to show that the swelling, tenderness, immobility, of plaintiff's knee, at the time of the trial and for some time preceding it, was not caused by the street car collision complaind of, the court properly refused to strike out the answer of one of such witnesses that plaintiff was "suffering from a disease of the knee joint superinduced by the injury."

5. ———: **Instructions: Assuming Facts.** In a suit for damages for personal injuries charged to have been received by plaintiff by reason of a collision between one of defendant's street cars, on which plaintiff was a passenger, with another, of defendant's cars, an instruction which says that "if the jury find from the evidence that plaintiff was a passenger in one of said cars and by reason of said collision plaintiff was injured, then," etc., is not erroneous as assuming that plaintiff was injured.

6. ———: ———: **Stating Maximum Damages.** In a suit for damages for personal injuries an instruction which tells the jury that if they find for plaintiff they should assess her damages at such sum or sums as they believe from the evidence will be a fair compensation to her "not to exceed the sum of $25,000" is not erroneous as containing a judicial hint that the court would approve a verdict for the amount stated.

7. ———: ———: ———: **Mentioning Amount Claimed.** Under our practice it is not ordinarily reversible error to give an instruction mentioning the amount of the damages claimed in the petition and warning the jury not to exceed it in their assessment.

8. ———: **Excessive Damages: New Trial Sustained on Other Grounds.** Where the evidence falls short of showing, in a personal injury case, that plaintiff's nervous system was permanently injured and also that the function of her knee was permanently impaired, a verdict for $12,000 is excessive, and a motion for new trial on that ground is properly sustained, although the trial court sustained it on the ground of newly discovered evidence.

10. ———: ———: ———: **Remittitur: In Appellate Court.** Where the trial court grants a new trial to the defendant on the ground of newly discovered evidence, and the Supreme Court disapproves of this action but finds that defendant was entitled to a new trial on the ground of excessive damages, it cannot reverse the order granting a new trial and order a *remittitur*, so that plaintiff, if he elect to do so, may have judgment for the remainder. It can only affirm the order granting the new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Thos. C. Hennings*, Judge.

AFFIRMED.

*D. Franklin Garber* and *Claude D. Hall* for appellant.

(1) Motions for a new trial on ground of newly-discovered evidence are regarded with a jealous eye and construed with strictness by the courts. They should be tolerated, not encouraged; viewed with aversion rather than favor; granted as an exception and refused as a rule. Tootle & Co. v. Lysaght & Co., 65 Mo. App. 139; State v. McLaughlin, 27 Mo. 111; Cook v. Railroad Co., 56 Mo. 380; State v. Sansone, 116 Mo. 1;

Grocery Co. v. Hotel Co., 183 Mo. App. 429; State v. Bybee, 149 Mo. 632; Porter v. Stock Yds. Co., 213 Mo. 372; Blair v. Paterson, 131 Mo. App. 122.  (2) Before a new trial can be granted on newly-discovered evidence, applicant must be held to the strictest accountability for failure to obtain the requisite evidence in the first instance.  Miller v. Whitson, 40 Mo. 97;  Shaw v. Besch, 58 Mo. 107;  James v. Life Assn., 148 Mo. 1;  Stahlman v. Rys Co., 183 Mo. App. 144;  Aaron v. Street Ry., 159 Mo. App. 307;  Eidson v. Street Ry., 209 S. W. 577;  Knox v. Ry. Co., 199 Mo. App. 64;  Bowen v. Matlack, 188 S. W. 99;  State v. Morgan, 96 Mo. App. 346;  Jones v. Furnishing Co., 77 Mo. App. 474.  (3) Where there is no statement in the affidavit that the verdict is unjust, or that the defense has merits, the motion should be overruled.  Culbertson v. Hill, 87 Mo. 553.  (4) In order to sustain a motion on the ground of newly-discovered evidence, it must appear that the evidence is material.  Goff v. Mulholland, 33 Mo. 203; Mayor of Liberty v. Burns, 114 Mo. 426;  King v. Gilson, 206 Mo. 264;  Winn v. Grier, 217 Mo. 420;  State v. Miller, 144 Mo. 26.  (5) To sustain a motion for a new trial on this ground, the newly-discovered evidence must not be merely contradictory.  Boggs v. Lynch, 22 Mo. 563; Stahlman v. Ry. Co., 183 Mo. App. 144. (6) The newly-discovered evidence must not be merely cumulative. Gardner v. Ry. Co., 167 Mo. App. 605; State v. Nickens, 122 Mo. 607;  State v. McLaughlin, 27 Mo. 111;  State v. Welsor, 117 Mo. 570; State v. Nettles, 153 Mo. 464; Bed Co. v. Ry. Co., 148 Mo. 478;  State v. Bybee, 149 Mo. 632.  (7) The evidence must be such as to produce a different result upon a retrial.  Stephens v. City of Macon, 83 Mo. 345;  Lyons v. Met. St. Ry. Co., 253 Mo. 143;  State v. Sansone, 116 Mo. 14;  Madden v. Realty Co., 75 Mo. App. 358;  State v. Estes, 209 Mo. 306.  (8) This court will reverse the decision of the lower court and give such judgment as ought to be given.  Sec. 2083, R. S. 1909;  Smith v. White, 165 Mo. 590;  Bragg

v. Street Ry. Co., 192 Mo. 366. (9) The court did not err in permitting Dr. Horwitz to testify that the disease in plaintiff's knee joint was superinduced by the injury. It was perfectly proper for this witness to state his conclusion, as he was shown to be a physician and surgeon of experience with reference to such matters, and that he had been treating the plaintiff for some time. Fullerton v. Fordyce, 144 Mo. 519; Halfenstein v. Medart, 136 Mo. 595; Laughlin v. Railway, 275 Mo. 473; Torreyson v. Rys., 246 Mo. 703. Again, there was no objection made and exceptions saved to this testimony. Higgins v. Jasper. 134 Mo. App. 1; State v. Scullin, 185 Mo. 709; Ross v. Pants Co., 241 Mo. 296. And the exception must be taken immediately. Moran v. Stewart, 246 Mo. 462. Not only was this testimony admissible, but the defendant's counsel himself brought out this testimony in his examination of Dr. Horwitz. And the rule is, that a party litigant cannot complain of testimony over his objection where evidence of the same character has been admitted without objection, or where he himself introduces like evidence. Masonic Mutual v. Lackland, 97 Mo. 137; Laughlin v. Railway, 275 Mo. 474. (10) There is no merit in respondent's argument that the verdict was excessive. The trial judge did not assign an excessive verdict as a ground for sustaining the motion for a new trial. The plaintiff received injuries of a serious and permanent character. Plaintiff is a single woman, and at the time of trial was 36 years of age and earning $66 a month as a stenographer in the postal service. As a result of the collision she was knocked unconscious and was in a dazed condition for several minutes thereafter; her face was cut and bleeding, and her leg was so injured she could hardly get off of the car; her knee and upper part of the right leg was injured; she could hardly get home; she limped so; her limb bothered her; she kept getting worse right along; was constantly under the care of physicians down to the date of trial. On January 29th, subsequent to the

accident; which was on the 19th day of December previous, her limb was so sore and tender that it was necessary to put her leg in a cast. Her whole limb was swollen, and on the last of March she had to get crutches. Though the cuts on her forhead were healing she was put to bed for six weeks; she was very nervous.

*Charles W. Bates, T. E. Francis* and *Albert D. Nortoni* for respondent.

(1) The trial court did not err in granting defendant a new trial on the ground of the discovery by defendant, subsequent to the trial, of evidence which tends to show that plaintiff's injuries did not result from the street car collision, but resulted from an automobile collision, for the following reasons: (a) Since defendant's motion for a new trial on this ground was addressed largely to the trial court's discretion, the sustainment of the motion should not be set aside by this court, unless the trial court clearly abused its judicial discretion; and any doubt on this point should be resolved in defendant's favor. McPherson v. Harvey, 183 S. W. 654; Insurance Co. v. Curran, 45 Mo. 145; Coleman v. Cole, 96 Mo. App. 33; Cook v. Railway Co., 56 Mo. 384; Allen v. Railway Co., 167 Mo. App. 505. Since the trial court adjudged the verdict unjust, it was its duty, and it had the right, to grant a new trial under the circumstances, and this court should encourage the trial court in the performance of that duty, and heretofore has done so in like cases. Devine v. St. Louis, 257 Mo. 475; McCarty v. Transit Co., 192 Mo. 401; Rickroad v. Martin, 43 Mo. App. 603; Reid-Murdock & Co. v. Lloyd & Moorman, 61 Mo. App. 648; Iba v. Railway Co., 172 Mo. App. 141; Lorenzen v. Railroad, 249 Mo. 187; Taylor v. Ry. Co., 163 Mo. 191. (b) The trial court did not, in sustaining defendant's motion for a new trial, abuse its judicial discretion, for the reason that defendant made a substantial showing entitling

it to a new trial on the ground of the newly discovered evidence. McPherson v. Harvey, 183 S. W. 654; Ry. Co. v. Ransom, 5 Ga. App. 740; Davis v. Sim, 92 Kan. 264; Mason v. Meloan, 165 Ky. 582; Thornton v. Rhode Island, 67 Atl. 451; Spencer v. Erie R. Co., 75 Atl. 155. (c) The newly discovered evidence was not cumulative. Chlanda v. Transit Co., 213 Mo. 268. (d) The admission of plaintiff, that she sustained severe injuries in an automobile collision, is original evidence, for the reason that she was a party to the record, and, since defendant filed her affidavit, there was a showing that it could be produced on a new trial. Southern Bank v. Nichols, 202 Mo. 324; Bank v. Epstein, 221 Mo. 303. (2) The trial court did not err in granting defendant a new trial, and its order granting defendant a new trial should, therefore, be affirmed, for the reason that it erred in admitting the testimony of Dr. Horwitz that plaintiff suffered from a ''disease'' of the knee joint, since such ''disease'' was an element of special damages not pleaded and was not shown to be a necessary result of the injuries pleaded in the petition. Hall v. Coal & Coke Co., 260 Mo. 371. (a) The court will not reverse the order of the trial court in granting a new trial if it can be sustained upon any ground of the motion for a new trial, even though not sustainable upon the ground specified of record. State ex rel. Hartman v. Thomas, 245 Mo. 71. (3) The trial court did not err in granting defendant a new trial, and its order granting a new trial should, therefore, be affirmed, for the reason that it erred in admitting the testimony of Dr. Horwitz, that the ''disease'' in plaintiff's knee joint, from which she suffered, ''was superinduced by'' the injury, thus permitting the witness to state a mere conclusion and to invade the province of the jury. De Meat v. Storage Co., 231 Mo. 630; Castanie v. United Rys., 249 Mo. 196; Jackmann v. Ry. Co., 187 S. W. 787; Deiner v. Suttermeister, 266 Mo. 521; Rusk v. Pryor, 190 S. W. 1038; Henson v. Kansas City, 210 S. W. 16; Willis

v. Ry. Co., 199 S. W. 738; Smart v. Kansas City, 208 Mo. 202; Glasgow v. Met. St. Ry. Co., 191 Mo. 347; Roscoe v. Railroad, 202 Mo. 576. (4) The trial court did not err in granting defendant a new trial, and its order granting a new trial should, therefore, be affirmed, for the reason that the verdict was so grossly excessive as to be indicative of the fact that it was, and because it was, as a matter of fact, the result of bias and prejudice on the part of the jury against defendant. Cook v. Globe Printing Co., 227 Mo. 614; Partello v. Ry. Co., 217 Mo. 661; Chitty v. Ry. Co., 148 Mo. 82; Gurley v. Ry. Co., 104 Mo. 234; Adams v. Ry. Co., 100 Mo. 570. (a) The verdict was grossly excessive. Nicholds v. Glass Co., 126 Mo. 68; Adams v. Ry. Co., 100 Mo. 555. (b) There was no evidence of permanent injury. Wilbur v. Elec. Ry. Co., 110 Mo. App. 697.

ELDER, J.—This is an action for damages for personal injuries alleged to have been received by plaintiff in a collision between two of defendant's street cars, in one of which she was a passenger.

On December 19, 1916, the defendant was engaged in operating various lines of street railway in the City of St. Louis. On that date plaintiff boarded and became a passenger on one of defendant's cars, it being of the type known as a "pay as you enter" car, receiving passengers at the rear end. Near the entrance there was a small space, enclosed with an iron railing, in which the conductor stood to receive fares. After plaintiff had paid her fare and while standing in the vestibule, holding to the iron rail enclosing the conductor's booth, not having had time to reach a seat, the car in which she was riding was run into by another of defendant's cars. The vestibule was partially demolished and the car itself derailed. Plaintiff was knocked, or thrown, down by the impact and was unconscious for a minute or so. When she got up, or was helped up, she was in a dazed condition. She got out of the

car and walked about thirty or forty steps. She then took another car and rode a distance, en route home, transferred to another line on which she rode a short distance, and then got off and walked four blocks to where she lived. So far the facts seems to be conceded. The nature and extent of plaintiff's injury, if any, resulting from the collision, were the subject of the controversy at the trial below.

The petition alleges that, as a direct result of the collision, plaintiff "was violently thrown and knocked down and about in said car and was renderd unconscious thereby, her nerves and nervous system were greatly shocked and injured, her head and face was cut and lacerated, her right leg and knee and knee joint and the bones, muscles and ligaments thereof were greatly strained, bruised, torn, and injured and her said knee and joint thereof was made, and is, stiff and immobile and is permanently injured; that as a direct result of said injuries, caused and occasioned by the negligence of defendant, its agents and servants, as aforesaid, plaintiff states that she has suffered great bodily pain and mental anguish and will in the future suffer such pain; that she was made, and is, very restless, nervous and suffers from loss of sleep, and will in the future suffer from nervousness as a direct result of said injuries; that as a direct result of said injuries she has been disabled from carrying on her duties, that of clerk in the United States post office at said City of St. Louis, and her earnings amounting to $75 per month have been lost to her, and she will in the future be deprived of and suffer a loss of earnings by reason of such disability and injuries so negligently inflicted upon her in the manner, and by the means aforesaid."

The answer is a general denial.

With respect to her alleged injury and the resulting impairment of her earning capacity, plaintiff's evidence, which is of a substantial character, tends to show the following:

At the time·of the collision in which she claims that she was injured, plaintiff was thirty-five years of age, unmarried, living with her mother, brother and sister, and being in the employ of the United States as clerk and stenographer in the Post Office at St Louis at a salary of $800 a year. Prior to that time her general health was good and had been all her life. She had not theretofore suffered from nervousness in any respect, nor had her right leg or knee ever pained her or caused her the slightest annoyance in any way.

As an immediate result of the collision, plaintiff received two slight cuts or abrasions on the left side of her head, suffered nervous shock and experienced severe pain in her right leg and knee. The pain in her limb was so great that she had difficulty in getting home. On arriving there she gave way to a spell of hysterical crying before she could tell her mother what had happened. The next morning Dr. O. T. Upshaw was called. He found no external evidences of injury of any kind, except an abrasion on her head, but she was extremely nervous and complained of pain in her leg and knee. He treated her for the nervousness and prescribed a liniment for her limb. He continued to treat her for three or four weeks, making local applications of various kinds to the leg and knee and having plaintiff wear an elastic stocking and knee protector. Her pain and nervousness, however, remained unabated and she began to limp. During this time, under his advice, she continued at work, having to remain at home for a day or two from time to time. On January 29th following, plaintiff put herself under the professional care of Dr. Harry Upshaw, her mother's family physician. He found her limb at that time slightly swollen at the knee, that there was retarded motion and extreme pain upon pressure, or upon forced motion. He thought best to immobilize the knee by putting it in a cast and confining plaintiff to her bed, and this he did for a period of four weeks. About March 1st the cast was taken off but the knee

continued swollen and on the advice of Dr. Upshaw plaintiff put hot pads to the leg and rubbed it with alcohol. When moving about she used crutches. This treatment gave no results and about the first of June Dr. Upshaw turned her over to an osteopathic physician. During the time that Dr. Harry Upshaw was treating plaintiff, she was extremely excitable, trembling whenever he attempted to do anything to her knee, and her nervous condition became so extreme as to verge on hysteria. On cross-examination Dr. Upshaw said that there must have been some other condition which produced the swelling of plaintiff's knee than traumatism, otherwise the swelling would have disappeared when the knee had been put into a cast.

Dr. Josephine De France, the osteopath to whom the case was referred, found the knee joint stiff, the cartilage seeming to be locked between the two large bones of the leg. It was subjected to osteopathic treatment from June until the latter part of September without result. These treatments were then discontinued. Plaintiff next consulted Dr. A. E. Horwitz, a specialist in bone surgery. He began treating her on October 10, 1917, and at the time of the trial in January, 1918, she was still under his care. On his first treatment, Dr. Horwitz found plaintiff's knee joint somewhat swollen and rigid and the motion only about one-third of what it would have been had it been normal. There was tenderness around it and she complained of its paining her. At the time of the trial these conditions had not yielded to his treatment. Plaintiff could bear her weight on her limb, but could not use it in walking. On the witness stand, Dr. Horwitz was asked whether in his opinion, plaintiff would ever be able to have "the full and complete and normal use of her limb and knee." He answered: "I doubt it." On being asked what he treated the knee for, he answered, "my diagnosis was tuberculosis of the knee joint." Defendant objected that that was a matter of special damages and was not pleaded. The ques-

tion was withdrawn, the answer stricken out by the court and the jury cautioned to disregard it. This witness further testified, without objection, that the rigidity of the joint which he found could have been caused by either an injury or disease. It could have been produced by injury followed by disease. He was then asked if the condition of the knee as he found it could have been brought about by an injury. His answer was, "my interpretation of that would be that it was disease of the joint coming from an injury; that the disease was superinduced by the injury." Defendant moved that the answer be stricken out on the ground that "it is just another way of bringing in something that is not pleaded." The motion was overruled. On cross-examination, the witness further testified that he found the knee in a diseased condition, and that such condition, if caused by an injury, would have developed within a month or two after the happening of the injury.

Plaintiff was unable to do any work after February 1, 1917. At the time of the trial she had incurred, for medical treatment, an expense of approximately $560.

Defendant's evidence may be briefly summarized as follows:

Six radiographs were taken of plaintiff's knee; two on January 26th; two on June 12th; one on September 14th; and one on September 20th—all in the year 1917. None of them, according to the experts who testified on the subject, showed any injury to, or dislocation or fracture of, either the bones or ligaments of the joint. They disclosed nothing whatever that was abnormal.

Plaintiff was examined on three different occasions by a surgeon in the employ of defendant and at two different times by a physician appointed by the court. On the day of the accident and within an hour or two thereafter, Dr. J. J. Russler, at the instance of defendant, called on plaintiff and made an examination. He found that she had an abrasion over the left eye and that she complained of pain in the left temple and in her right

286 Mo.—33

leg. He found no objective symptoms of an injury to either her left temple or right leg. Dr. Carl J. Young, another of defendant's surgeons, made an examination of plaintiff on January 10, 1917. To him she complained of pain in her right knee. He discovered a slight tenderness over two of the muscles; otherwise there were no signs of injury. He found "nothing the matter with the bone, no limitation of motion, no dislocation, nothing wrong." On March 14, 1917, Dr. J. T. Turley, also at the instance of the defendant, examined plaintiff. He found her to be extremely nervous, verging on a state of hysteria, the right knee slightly swollen, pain upon motion and the motion limited. Plaintiff was next examined on October 29th by Dr. Chas. G. Chaddock, a specialist in nervous and mental diseases, who was appointed by the trial court for that purpose. His examination, he said, did not reveal any material or organic injury to plaintiff's nervous system. On January 4, 1918, Dr. James B. Prichard, another of the court's commissioners, examined her. He found the knee joint to show some stiffness and that plaintiff complained of pain on movement beyond a certain limit. She also complained of pain upon deep pressure at a little point on either side of the knee. He found nothing else wrong. There was no swelling of the joint. Plaintiff's leg, then under the treatment of Dr. Horwitz, had been in a plaster cast for several weeks. Dr. Prichard gave it as his opinion that the condition of the knee that he found was the result of it having been immobilized for a considerable length of time. In reply to hypothetical questions, he expressed the further opinion, that, as no objective symptoms of injury to the knee developed for approximately a period of six weeks after the accident, the accident did not primarily cause the condition of the knee that he found, but that the same was probably due to the previous osteopathic manipulations. He further testfiied that he found no indications of disease of the joint and that in his opinion plaintiff would recover the normal use of the limb.

The court gave two instructions for plaintiff, as follows:

"No. 2.    If the jury find from the evidence that plaintiff was a passenger in one of said cars and by reason of said collision plaintiff was injured, then the mere fact of said collision of the two cars is presumptive evidence of negligence on the part of defendant's agents and servants and the defendant is liable in this suit and your verdict must be for the plaintiff, unless you further find that plaintiff was guilty of any want of ordinary care or prudence which directly contributed to her injury.

"No. 7.    If the jury find for the plaintiff they should assess her damages at such sum or sums as they believe from the evidence will be fair compensation to her, not to exceed the sum of $25,000."

The jury returned a verdict for the plaintiff, assessing her damages at $12,000.  In due course the defendant filed a motion for a new trial containing numerous assignments of error, including the claim that the verdict was excessive, but which was sustained on the single ground of newly discovered evidence.  The evidence mentioned in the motion for new trial alleged to have been discovered since the trial of the cause consisted of "a verified written statement made by plaintiff November 7, 1917, wherein she stated that on October 21, 1917, she sustained severe injuries due to a collision between two automobiles, in one of which she was a passenger," and the testimony of Drs. H. L. Nietert and Olney A. Ambrose that in their opinion "plaintiff could not have received the said severe injuries on October 21, 1917, without causing further injury to the right knee, due to the severe impact of the two automobiles, as aforesaid."    The verified statement referred to in the motion, which was filed therewith as an exhibit, was a formal release signed by plaintiff and her brother, Walter W. Gaty, dated November 7, 1917, by which in consideration of $48.10 they released Dr. Nietert from all liability "now

accrued or hereafter to accrue . . . in any way aris-
ing from any and all injuries, losses and damages by
us or our property sustained or received on or about
the 21st day of October, 1917, through an accident which
occurred . . . when our Stewart Truck in which we
were riding was struck by an automobile. owned and
operated by Dr. H. L. Nietert, his agents and servants,
causing our truck to be damaged, and causing us to sus-
tain severe injuries.'' The release evidently followed
the regular form used by the company that was
carrying Dr. Nietert's casualty or liability insurance.
In support of the motion the affidavits of Drs. Nietert,
Ambrose and Scherck were filed. Dr. Nietert stated
that ''a machine belonging to him was in a collision
with an automobile truck in which plaintiff, Florence L.
Gaty, was riding, which impact was a severe one; that
following said collision, affiant made a physical examina-
tion of said Florence L. Gaty, and, on said examination,
affiant found that said Florence L. Gaty, had received
a blue spot on the inside of the left knee and abrasions
and bruises on the right arm.'' Dr. Ambrose stated that
he was present in court and heard the plaintiff testify
on direct examination concerning the accident and in-
juries alleged to have been received by her on December
19, 1916; that he had read the affidavit of Dr. Nietert;
and that it was his opinion, based on the facts therein
recited, that it would have been impossible for plaintiff
''to have received the second injury wthout causing
further injury to the right knee.'' Dr. Scherck's affidavit
was to the same effect. In further support of the motion,
defendant introduced the deposition of Dr. Horwitz. He
testified that he had not heard that plaintiff was in an
automobile accident until after the trial and that the
information caused him surprise. On cross-examination,
he stated that he fully examined plaintiff's right knee
on October 10th and again on October 26th, and that the
condition on the latter date was practically the same as
on the former one. In opposition to the motion plain-
tiff filed the affidavits of Walter W. Gaty and herself.

Walter W. Gaty stated that, "he was driving an automobile truck, accompained by his sister, Florence L. Gaty, and while in the act of leaving an oil station at Kingshighway, an automobile owned by Dr. Nietert ran into our car, hitting it square on the side, but the impact was not sufficient to upset our truck; in fact, I was not thrown out of my seat. I was not injured other than a slight bump on my nose; my sister was thrown up against me and her left limb struck the brake handle, bruising her left limb, and her right arm struck the steering wheel." He further stated that he expended $43.10 for repair of the truck and $5 for the use of another while the repairs were being made, totaling $48.10, upon the payment of which the American Auto Ins. Co. he executed the release to Nietert, and that neither he nor his sister made any claim for personal injuries. Plaintiff's affidavit was to the same effect as that of her brother. In addition she stated that she called the attention of their family physician, Dr. Upshaw, to her slight bruises, but he declined to prescribe treatment because they were inconsequential.

From the order granting a new trial plaintiff appeals.

I. To justify the granting of a new trial on the ground of newly discovered evidence, such evidence must be not only material but of such New Trial: character and weight that upon another Newly Discovered Evidence. trial it would probably produce a different result. [State v. McLaughlin, 27 Mo. 111; Mayor of Liberty v. Burns, 114 Mo. 426; Goff v. Mulholland, 33 Mo. 203; King v. Gilson, 206 Mo. 264; Shaw v. Besch, 58 Mo. 107; Stahlman v. Railways Co., 183 Mo. App. 144.] It is claimed by defendant that the after discovered evidence in the present case meets this essential requirement because it tends to show that plaintiff suffered injury to her right knee long after the alleged one for which she sues. But does it? An analysis of that evidence will assist in answering this

pertinent question. The only parts of it that could be construed as furnishing any proof whatever of a second or later injury to plaintiff's right knee are the release to Dr. Nietert signed by her and her brother and the testimony of Drs. Ambrose and Scherck, as disclosed by their affidavits. The release makes not reference to plaintiff's knee, but it does recite that the automobile collision caused "us to sustain severe injuries." The face value of this recital as importing verity is immediately discounted when it is recalled that it is the language of a claim agent or adjuster who has but one purpose in mind, that of relieving his company of all liability, "now accrued or hereafter to accrue." When it is shown that the small sum paid for the release was merely to reimburse the owner of the disabled truck for money expended for its repair and for rental of another machine, it ceases to have any evidential value in so far as it asserts that the givers of the release suffered "severe injury."

Drs. Ambrose and Scherck say that they heard the evidence relating to the condition of plaintiff's right knee introduced at the trial, that they read Dr. Nietert's affidavit in which he stated that the impact, referring to the automobile accident, was a "severe one" and that following the collision he had made a physical examination of plaintiff and found "a blue spot on the inside of the left knee and abrasions and bruises on the right arm." Based solely on these circumstances, they gave it as their opinion that plaintiff necessarily suffered a further injury to her right knee in the automobile accident. In considering what weight could be accorded this opinion evidence, the first thing that occurs to us is that the learned experts are willing to hazard a grave opinion on remarkably meager data. And even when considered in the light of all the facts disclosed by the evidence touching the automobile accident and its consequences, these opinions could have but little probative force. It seems to us that had all the evidence which it is claimed

tends to show a second and later injury to plaintiff's right knee been offered at the trial of the cause, it is highly improbable that the result would have been different. And in passing it should be said that the evidence of which respondent seeks to have the benefit by another trial does not directly or by necessary inference show any increase of plaintiff's nervous condition after the automobile collision.

We are not unmindful of the rule that accords the trial court a large discretion in the matter of granting new trials on the ground of newly discovered evidence, nor of the policy that encourages the sound exercise of such discretion; notwithstanding, we are of the opinion that as to that ground a new trial was improvidently awarded in the instant case. [Stahlman v. Railways Co., 183 Mo. App. 144.]

II. Taking up other assignments in defendant's motion for a new trial, now urged as presenting grounds sufficient to sustain the court's action, we **New Trial: Re-** come first to the refusal of the court to **fusal to Strike** **Out Evidence.** strike out the answer of the witness Horwitz, that plaintiff was "suffering from a disease of the knee joint superinduced by the injury." Defendant moved to strike this out on the ground that disease of the joint was not pleaded. Additional objections are now urged, but, as they were not made at the time the evidence was received, they were waived and cannot now be considered. A mere question of pleading is all, therefore, that is involved in this specification. The petition alleges that plaintiff's "right leg and knee and knee joint and the bones, muscles and ligaments thereof were greatly strained, bruised, torn, and injured and her said knee and joint thereof was made stiff and immobile and is permanently injured," and that as a result plaintiff suffered greatly bodily pain, etc. Defendant, in the cross-examination of plaintiff's medical witnesses, endeavored to show that the condition of plaintiff's knee at the time of the trial and for a considerable period

preceding it, viz., the swelling, tenderness and immobility, was not caused by the street car collision because these objective symptoms did not manifest themselves for a period of five or six weeks after the collision. The testimony under consideration was pertinent, therefore, as tending to show that the condition of the knee was caused by the injury received, through the intervention of disease which it superinduced. No effort was made to show that the disease was of itself a distinct or independent injury, or that it had had or would have, any other effect than that of causing plaintiff's knee to be "stiff, immobile and permanently injured," as mentioned in the petition. Such being the purport and effect of the evidence, it seems entirely clear that the allegations of the petition were broad enough to warrant its reception. This conclusion is not in conflict with the doctrine discussed and followed in the case of Hall v. Coal Co., 260 Mo. 351, 371, cited by defendant, where, in a suit for personal injuries, a recovery for impotency was denied under a petition in which no reference was made to such a condition.

III. Respondent to sustain the motion for new trial, criticizes plaintiff's instruction No. 2 on the ground that it assumes that plaintiff was injured, and No. 7 on the ground that it contains a judicial hint that the court would approve a verdict for $25,000. A reading of instruction No. 2 as a whole makes it apparent that respondent's counsel are merely hypercritical. The contention as to this instruction is without merit and is accordingly disallowed. As to the alleged fault in No. 7, it is sufficient to say that under our practice it is not ordinarily reversible error to give an instruction mentioning the amount of damages claimed in the petition and warning the jury not to exceed it in their assessment (Lessenden v. Railroad, 238 Mo. 247, l. c. 264); and that there is nothing in the language of this instruction or in the situation presented by the evidence to make of this an exceptional case.

Instructions:
Assuming Facts:
Stating Maximum
Damages.

IV. Respondent's last insistence is that the verdict is excessive. If plaintiff's nervous system were permanetly injured, or the function of her knee permanently impaired, it probably could not be said **Verdict: Excessive Damages.** that $12,000 is an excessive award of damages. But in this respect the evidence falls short. There was nothing in the nature of the injury itself, so far as the evidence discloses, that warranted the jury in finding that its consequences were lasting. As to the expert evidence, only three witnesses gave testimony in respect to this phase of the case. They were Drs. Chaddock and Prichard, commissioners appointed by the court to make physical examinations of plaintiff, and Dr. Horwitz, her physician, who was treating her at the time of the trial. Dr. Chaddock, a specialist in nervous and mental diseases, found no evidence whatever of any material or organic injury to plaintiff's nervous system. Dr. Prichard discovered no symptoms of either injury or disease of the knee. The stiffness and pain on deep pressure which he found, he attributed to the previous long confinement of the joint in a plaster cast. He was of the opinion that she would recover the normal use of the limb. Dr. Horwitz, who diagnosed the condition of the knee as disease superinduced by injury, when asked whether plaintiff would ever recover the normal use of the knee, answered, "I doubt it." If his diagnosis was correct, he was better able than the jury to form a judgment as to the duration and after effect, if any, of the disease, yet he was unwilling to hazard a fixed opinion.

While in the nature of things it would not be possible for a complete recovery of plaintiff from her injuries to instantly occur immediately following the trial, without the intervention of a miracle, still the jury, so far as the evidence was concerned, could only conjecture when such recovery would take place, if at all. And, under the evidence, the jury were not justified in taking into consideration future consequences of plaintiff's

injuries in the assessment of her damages. [Wilbur v. Railway, 110 Mo. App. 689, and cases cited.] With such elements eliminated the verdict is clearly excessive.

V. Appellant asks, in the event we hold that the damages assessed by the jury are excessive, that we reverse the order of the lower court awarding the defendant a new trial, and order a *remittitur,* so that if New Trial: she elects so to do, she may have judgment for Excessive the remainder. This is our settled practice, in Damages. Remittitur. cases where the verdict cannot be otherwise impeached, in appeals from final judgments. [Cook v. Globe Printing Co., 227 Mo. 471, 542.] In this case, however, we cannot order an affirmance of the judgment on the condition of a *remittitur* being entered. There is no judgment before us. An order granting a new trial, by necessary implication, if not expressly, sets aside the verdict and judgment. An appeal from such an order does not annul or vacate it; it merely suspends its operation and effect during the pendency of the appeal so far as further affirmative proceedings in the cause are concerned. And in this court the only thing before us for consideration is the propriety of the order.

Upon appeal from an order sustaining a motion for a new trial, if, in our opinion, the reasons of the trial court are insufficient, the verdict must stand, unless the party in whose favor the new trial was granted affirmatively shows that it was properly set aside on other grounds. [Candee v. Railway Co., 130 Mo. l. c. 154; Haven v. Railway Co., 155 Mo. 216.] We are not confined to a consideration of the particular ground on which the trial court based the order. If the respondent brings to our attention other grounds of the motion, which, on the record, entitled him to a new trial, we affirm the order despite the invalidity of the ground upon which the trial court acted. If neither the one specified by the trial court nor any of those suggested by respondent is valid, we reverse the order. In this case the defendant

was not entitled to a new trial on the ground of newly discovered evidence, but was on the ground of the excessiveness of the verdict, set up in the motion.

Entertaining the views herein indicated, we therefore hold that the order of the trial court granting defendant a new trial should be affirmed. It is so ordered. All concur; *D. E. Blair, J.*, in result.