Stella Woods, Admx., Respondent, v. George W. Moffitt, Appellant.*—38 S. W. (2d) 525.

Kansas City Court of Appeals.   January 26, 1931.

*Trusty & Pugh* for respondent.

*Henning & Baker* and *John D. Wendorff* for appellant.

BOYER, C.—R. W. Woods instituted an action against defendant to recover for personal injuries caused by an automobile driven by defendant. Plaintiff had judgment in the sum of $6500 and defendant duly appealed. After the case reached this court plaintiff died and the name of Stella Woods, administratrix of his estate was substituted as respondent; hence the above title of the cause.

The petition states that on January 12, 1927, "while the plaintiff was walking southward on a trafficway known as Beardsley road and about 100 feet north of the Twelfth street viaduct, both public thoroughfares in Kansas City, Missouri, and while he was on the west side of said trafficway walking southward, an automobile being then and there operated at said place by the defendant negligently ran into and against the plaintiff severely injurying him." It is also charged that defendant negligently operated the car at a high and dangerous rate of speed; failed to have it under reasonable control; failed to exercise the degree of care required by law; failed to keep a lookout for pedestrians; failed to have the car equipped with a horn or signal device; failed to give warning, and failed to exercise the highest degree of care in the operation of said vehicle.

Following these statements are three paragraphs numbered 9, 10, and 11, as follows:

"9. Plaintiff was not aware of the approach of said automobile until too late to escape being struck and the defendant by the exercise of due care could have seen said collision was about to occur in time, by the exercise of due care, to have stopped said automobile or sufficiently reduced its speed, or changed its course, or to have warned plaintiff of its approach, and by so doing it could have avoided

said collision with the plaintiff and avoided injuring the plaintiff, and defendant negligently failed to exercise such care and such failure helped to cause and caused said collision and injury to plaintiff.

"10. Defendant was further guilty of negligence in that it was dark and raining and late at night and his automobile was not equipped with any or sufficient headlights by which to operate said automobile.

"11. He was further guilty of negligence in maintaining said automobile in such condition when he was unable to see where he was going and said condition directly caused the collision with the plaintiff and the subsequent injury.

Another charge, of negligence followed the above and it is then alleged that all the negligent acts and omissions of defendant operated to cause the collision and plaintiff's injury.

The answer is a general denial of the petition; a specific denial of negligence on the part of defendant; a charge of contributory negligence on the part of plaintiff, and further averments in these words:

"This defendant avers the fact to be that said plaintiff was negligent and careless in failing to observe the position he occupied upon said highway at the time and place mentioned in plaintiff's first amended petition, and in failing to have and maintain a proper lookout and due regard for the traffic upon said trafficway at said time and place. . . . Defendant avers the fact to be that said plaintiff was negligent and careless in all that he did relative to going upon said trafficway at the time and place mentioned in plaintiff's first amended petition, and in failing to have and maintain a proper lookout and have due regard for the traffic upon said trafficway at said time and place."

The reply was a general denial. The court denied defendant's request for a peremptory instruction at the close of plaintiff's evidence. Defendant offered proof, and at the close of all the evidence defendant requested the following instruction:

"The court instructs the jury at the close of all the evidence that under the pleadings and the evidence in this case plaintiff is not entitled to recover and your verdict must be for the defendant."

This was denied. Instructions were requested by both sides and were given by the court submitting the case to the jury upon the humanitarian theory only. The errors urged are (1) that the demurrer to the evidence should have been sustained, (2) that the petition fails to state any cause of action, (3) that the evidence was insufficient to bring the case within the humanitarian rule, (4) that improper testimony was admitted, and (5) that plaintiff's instructions A, C, and D, are erroneous.

The facts: Plaintiff was injured January 12, 1927, about the hour of six P. M. He had been employed in the industrial district

in Kansas City known as the west bottoms, between which place and the uptown district is a long and precipitous bluff extending generally from north to south. On the west side of the bluff are certain public highways for vehicular traffic, one of which is designed as Beardsley road. It extends from Fifth street southwardly to Seventeenth street; the roadway of Twelfth street is carried over Beardsley road upon a viaduct; there are no other intersecting streets or highways. Plaintiff's evidence is to the effect that he started home from his place of work about six o'clock P. M., walked up Eighth street from which he entered Beardsley road, and continued southwardly near the west edge thereof for a distance of approximately 2000 feet, and to a place about 150 to 200 feet north of Twelfth street. At the last mentioned place and in that vicinity there was upon the west side of Beardsley road a concrete balustrade; plaintiff says that he was walking "just about as close to the railing as a man could walk;" that he did not know that the car was near him until he was hit; that there was no warning; that he saw no lights from the car; that he did not know anything about the automobile except that it hit him; that he was going south and looking south, about 150 feet from the Twelfth street viaduct; that there were lights on the Twelfth street viaduct; that he did not know what struck him; he was immediately rendered unconscious and remained so for a long period of time.

Defendant testified that he left his work in Kansas City, Kansas, about 5:30 P. M., drove over intercity viaduct, entered Beardsley road, traveled southwardly thereon, and arrived at the place of collision in a Dodge automobile about fifteen minutes thereafter; it was dark and drizzling rain; the headlights of his car were in good condition and he could see the railing to the right and in front for a distance of 100 feet, beginning at a point eight or ten feet in front of the car, but he could not see the railing back of that point; that when he reached a point within 150 or 200 feet north of the Twelfth street viaduct, "something like paper or something, hit the front of my windshield. I studied what it was. I thought it was somebody threw a grip from the viaduct above as the street car went by. I stopped my car, and I went back to see what it was, and I found a man lying on the pavement with his feet toward the railing and his head out this way." He further said that the man's feet were about two or two and one-half feet from the railing and closer than his head. He had previously testified in his deposition in these words: "All I saw was a drop like that (indicating), and a hand hit my windshield; and I thought, what in the world is it, and he must have hit the side of my car, sat down on the running board of my car; that naturally rolled him over, then I went along, and I thought, the Twelfth street bridge." Defendant's evidence further shows that Gee, what was that, and I thought somebody threw something off

he had entered Beardsley road and was traveling southwardly at a moderate rate of speed and at the time of the collision was within about six feet of the west railing; that no one was in the road; that if any one had been there he could have seen him for a distance of 100 feet; that he could stop his car within six feet; that when he stopped his car he walked back twenty or thirty feet where the man was lying; that there was no one ahead of him before the collision; that pedestrians were accustomed to use Beardsley road; that he expected to find them on the road; that he was driving about eight miles per hour; that he could have seen plaintiff 100 feet ahead if plaintiff had been walking on the highway; that he did not sound his horn; that he asked the first man who came along to call the police who arrived in about twenty or twenty-five minutes after the collision, and that the ambulance arrived about an hour after the collision and took the man away.

It was defendant's position at the trial that plaintiff came up a path from the bottoms leading to Beardsley road and thence over the balustrade and appeared in front or to the side of defendant's car so suddenly that defendant had no opportunity to avoid striking him. The evidence tends to show that there is a well-defined path leading up the bluff on the west side of Beardsley road and to it about 250 feet north of the Twelfth street viaduct; and that on the east side of Beardsley road, about sixty-five feet south of where the path from the west meets the highway, there is a catch basin from which point there is a well-defined path leading eastward and upward to the top of the hill. Pedestrians going to and from the west bottoms to the uptown district walk along said path, climb over the railing on the west side of Beardsley road, cross the highway in a southeasterly direction to the catch basin, and then continue along the path up the hill. Plaintiff said he knew nothing about the path and never used it. Other reference will be made to the evidence when appropriate in the course of the opinion.

### OPINION.

The points that the demurrer to the evidence should have been sustained and that the petition fails to state a cause of action are commingled by appellant's method of treatment. He contends that the court erred in overruling the demurrer to the evidence "for plaintiff's said amended petition was so repugnant that it was self-destructive in that allegations of negligence 9, 10, and 11 are so conflicting that they cannot stand together in the same petition." It is also asserted and reiterated in different ways that "the evidence did not bring this case within the humanitarian rule."

We will first give attention to the assault upon the petition. The argument of appellant in effect is that repugnancy exists because

of conflict between the humanitarian cause of action stated in paragraph 9 and the cause of action for specific negligence stated in paragraphs 10 and 11, in that the charge in paragraph 9 that defendant "could have seen" is in conflict with and is overcome by the charge in paragraph 11 that defendant "was unable to see," and that the petition is thereby destroyed. It is apparently assumed that paragraph 9 states a cause of action under the humanitarian rule, and in view of the legal effect of the answer hereinafter noted and the time of the attack upon the petition there is no reason why we should not so treat it. The charge against the petition is merely that of repugnancy, and in disposing of the point we may concede that the statement of the cause of action set forth in paragraph 9, and the statement of the cause of action set forth in paragraphs 10 and 11 are repugnant. Yet if defendant desired to avail himself of an objection to the petition because of such repugnancy he was required to move in proper time and manner. An alleged defect of repugnancy cannot be reached by a demurrer to the evidence, but can only be reached by a demurrer to the petition or by a motion to elect. [McQuade v. Suburban Ry. Co., 200 Mo. 150, 156.] There was no demurrer to the petition nor a motion to elect between repugnant statements of causes of action and no attack of any character upon the petition until after verdict.

In considering the sufficiency of the petition to sustain the verdict in this case, regard will be had to the time and manner in which the alleged defects of the petition are brought into question, and when no objection is made until after verdict every reasonable intendment will be accorded the petition. Objections similar to the one here made are said to be received without favor and the reasons therefor have been often stated. The controlling ones are that the objections should be made at a time when the defect, if any, may be cured by amendment, and that a delayed objection, after verdict, is in the nature of one coming from ambush. [Kern v. United Ry. Co., 214 Mo. App. 232, 238, 259 S. W. 821, 823.]

Section 1550, Revised Statutes 1919, provides, *inter alia*, that when a verdict shall have been rendered in any case, the judgment thereon shall not be stayed or reversed "for any mispleading, . . . insufficient pleading, jeofail or misjoining issue" or "for the want of any allegation or averment on account of which omission a demurrer could have been maintained" or "for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a verdict." Under the foregoing provisions and in view of the authorities above cited, and many other adjudicated cases, the objection of appellant to the sufficiency of the petition on the ground stated comes too late. We cite only a few additional cases. [Stevens v. Westport Laundry Co., 25 S. W. (2d) 491, 497; Winn v. Railroad, 245 Mo. 406, 412; Clark v. Crandell,

219 Mo. 87, 93; Weber v. Terminal R. Assn., 20 S. W. (2d) 601, 603.]

We do not say that it is too late for defendant to raise for the first time on appeal the objection that the petition fails to state any cause of action. This privilege is always available as well as the privilege to question jurisdiction. Under the circumstances in this case the petition is not fatally defective for the reason assigned and is sufficient to support the verdict.

There is no merit in the contention that the evidence was insufficient to support the verdict under the humanitarian rule. It is said that there is no proof to show either when or where respondent got into a position of peril; that it is not possible to determine whether defendant could have avoided injuring him after he got in such position, and to submit the case to the jury was merely to permit a guess verdict. Such propositions wane in the light of the pleadings and proof. The conclusion is inevitable that plaintiff was in peril from the approaching car behind him; and furthermore, peril and obliviousness were not contested issues, but were admitted by the answer. [Allen v. Purvis, 30 S. W. (2d) 196, 200, and cases cited.] The jury did not accept defendant's theory and his testimony raising an inference that plaintiff climbed over the balustrade and arrived in front of or against defendant's car too suddenly for defendant to have averted the collision. The jury accepted the evidence tendered by plaintiff and the inferences therefrom as reflecting the true version of the occurrence, which was shown to be that plaintiff was walking southwardly with his back to the car which was approaching him; that he had been walking in that direction a distance of 2000 feet when he was struck by defendant's car. The inference to be drawn from plaintiff's testimony is that he did not change his course or step suddenly out of it in front of the car. The defendant's own testimony shows that if plaintiff had been upon the road as he testified, or any other place in the road, defendant could have seen him for at least a distance of 100 feet before striking him; that defendant gave no warning; and that he could have stopped his car under the circumstances within a distance of six feet. Defendant's testimony is further to the effect that about the time he approached plaintiff he was looking at a lighted street car upon the viaduct and did not see plaintiff. Under plaintiff's evidence, and that favorable to him, defendant could have seen plaintiff under the circumstances, if he had looked, in ample time to avoid the injury either by warning, stopping, or turning aside. The time and place of plaintiff's peril was established if required to be shown. The evidence clearly justified the submission of the case under the humanitarian theory.

Appellant further insists that the evidence is deficient in identifying plaintiff as the person who was struck at the time and place

mentioned; that plaintiff did not know who or what struck him, and defendant did not testify that he struck the plaintiff. It is apparent from the record that this was not a controverted question at the trial. The case was so treated by defendant, and it was at least tacitly admitted that plaintiff was the man struck by the defendant's car. Plaintiff was injured at the time and place and on the road where defendant said he struck a man. There is nothing to suggest that defendant struck any other man. The police officers when testifying referred to the man they found at defendant's car when they arrived at the scene of the collision as Mr. Woods. Defendant's evidence shows that he struck the man that the officers found, and defendant's counsel referred to this man as Mr. Woods in part of his cross-examination of one of the officers. The matter was not contested at the trial and should be treated as admitted. [Davidson v. Transit Co., 211 Mo. 320, 356.]

Appellant's next point is directed against plaintiff's instruction A. This instruction, in usual form, submits the case under the humanitarian rule and requires of defendant the exercise of the highest degree of care. The first criticism of the instruction is that it places an unwarranted burden upon defendant in requiring the righest degree of care because the petition is based upon a failure to exercise "due care," and that due care means ordinary care. This criticism is based on the assumption that the petition in describing the degree of care required of defendant is confined to the words "due care" used in paragraph 9. Such assumption is unwarranted because the petition specifically charges in other separate paragraphs that defendant negligently failed to use the degree of care required by law, and failed to use the highest degree of care in the operation of his car. The instruction was not broader than the petition. We do not agree that the use of the words "due care" in this case means ordinary care. It would have that meaning in a case where the measure of care which the law requires is ordinary. In the case of Hults v. Miller, 299 S. W. 85, 88, it is said:

"Negligence, does not, under all circumstances, necessarily mean the lack of ordinary care. It means lack of due care, and due care is a care adjusting itself to the circumstances of the case."

From the foregoing and further expressions used in the opinion and authorities cited, we may say in this case that due care is equivalent to the highest degree of care because the latter is the measure of care prescribed by law. It is required of defendant in this case even though submitted upon the humanitarian theory. [Gude v. Weick Bros. Undertaking Co., 16 S. W. (2d) 59.] It is also observed that the case was tried and submitted by instructions offered and given in behalf of both parties on the theory that it was the duty of defendant to use the highest degree of care.

It is further insisted that this instruction "gave the jury a roving commission to find that plaintiff was in a position of peril upon any theory it might see fit" because it failed to tell the jury what facts, conditions or surroundings created a position of peril, and failed to require the jury to find the existence of such facts, conditions or surroundings. Appellant does not point out the facts, conditions, or surroundings which should have been included in the instruction and were omitted. The requirements of the instruction were sufficiently accrruate and definite for a finding of peril from the approaching automobile. It is further stated that the instruction permitted the jury to find negligence "upon any theory it saw fit." The defect in the instruction is not indicated. It requires the jury to find that defendant failed to exercise the highest degree of care to stop, or slacken speed, or turn aside, or give warning, when he saw or could have seen the peril of plaintiff. It is also insisted that the instruction gave the jury a roving commission to find injuries which the jury might think plaintiff received without confining them to the injuries described in the petition and evidence. The instruction makes no allusion to the specific injuries for which plaintiff may recover nor to the measure of damages which may be awarded him. Another instruction covered the subject of measure of damages and appellant does not complain of it nor that the verdict is excessive. We find that the instruction which is criticized does not grant the jury a roving commission upon any of the subjects indicated, and we see nothing objectionable in it.

The next point is made against instruction C which reads as follows:

"On the issue as to when a person is in peril from injury by an automobile, you are instructed that such person is in peril at the very first instant when the driver of the automobile knows, or by the exercise of the highest practical degree of care, should know, that such person will likely be injured by such automobile."

It is said that this instruction invades the province of the jury to determine when, if at all, plaintiff was in a position of imminent peril, and that the instruction enlarges the field of imminent peril. Under the circumstances in this case it is not necessary for us either to approve or disapprove the foregoing instruction because whatever error may lurk in its technical construction is harmless; and we say so because the question of peril and obliviousness was not an issue in the case. That issue was obviated by defendant's answer as heretofore shown.

Complaint is made of plaintiff's instruction D which is said to be misleading and to cast a greater burden on appellant than the law exacts from him. That part of instruction D which is criticized informed the jury, in effect, that negligence on the part of plaintiff

would be no defense unless it was the sole cause of his injury, and that the negligence of defendant required to be found by plaintiff's instruction A did not in any way contribute to the injury. The instruction further informed the jury that the burden was not upon the plaintiff to show that he was not negligent or that if he was negligent that his negligence was the sole cause of the injury, but that the burden was upon the defendant to show these things. We find that defendant's instruction 18 is in effect the counterpart of instruction D, and that this phase of the case was tried and submitted upon the theory that if the collision was not caused solely by plaintiff's negligence, then his negligence was not a defense. Under the circumstances, we find no prejudicial error in instruction D.

The objection to the admission of testimony is that the court erred in permitting a police officer to testify that when he arrived at the scene of the collision defendant's car stood two or two and one-half from the balustrade. The evidence shows that the car had been moved a distance of from twenty to thirty feet before the officer arrived and that he did not arrive until twenty or twenty-five minues after the collision. Under these circumstances it is contended that it could not be said that what the officer testified to was a part of the res gestae. The complaint made here against the admission of the testimony is that it was hearsay. At the trial defendant objected because it was "misleading." The objection here presented is not the objection made when the evidence was offered, and the contention will not be allowed. [Clooney v. Wells (Mo. Sup.), 252 S. W. 72, 75; Gaty v. United Railways Co., 286 Mo. 503, 519, 227 S. W. 1041.]

Appellant has failed to show any error materially affecting the merits. Plaintiff had a meritorious case, his injuries were most serious, and no claim is made that the verdict is excessive.

The judgment should be affirmed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.