## J. P. ORR, Respondent, v. T. C. BRADLEY, Appellant.

**Kansas City Court of Appeals, June 24, 1907.**

1. **NEGLIGENCE: Falling Wall: Demurrer to Evidence.** The evidence relating to reasonable safety of a brick wall which fell in a storm is reviewed and the case is held properly sent to the jury.

2. ————: ————: **Jury: Instruction.** It is for the jury to judge whether the conduct of the owner of a wall that fell in a storm was that of an ordinarily prudent man in like circumstances, and an instruction telling the jury that if the city officials and the owner's architect advised him the wall was safe and he so believed, he was not negligent, is improper.

3. ————: ————: **Owner's Right: Instruction.** The owner of land has a right to maintain a wall thereon and is not the insurer of its safety and is not liable for its falling provided it was safe, or that he took every means to ascertain its safety that an ordinarily prudent man would have taken in similar circumstances, and so believed it would be safe; and an instruction set out in the opinion is condemned.

4. **JURY: Laws of 1905: Repeal: Instruction.** The jury law of 1905, applicable to certain cities, only repeals the general statute governing juries and jurymen in those instances where the two are inconsistent, and section 3763, Revised Statutes 1899, providing that no exception can be taken to a juror after he is sworn to try the cause, is not in conflict with the act of 1905.

5. ————: ————: ————: ————: **Waiver.** The policy of the statute is to promote fairness and impartiality in the trial, and the statutory requirements tend to subserve that purpose, but the absence of such requirements in a juror is not necessarily inconsistent with an impartial trial, and these requisites a party may waive.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones,* for appellant, filed argument.

*Robert O. McLin,* for respondent, filed argument.

ELLISON, J.—This action was instituted for the recovery of damages occasioned by a high brick wall, maintained by defendant, falling on plaintiff's house. The plaintiff prevailed in the trial court. There is no dispute between the parties as to the maintenance of the wall by defendant and of its falling on and demolishing plaintiff's house. But it is defendant's contention that he used and exercised proper diligence and care in ascertaining the safety of the wall and believing it to be safe, he allowed it to stand. And that its fall should be attributed to the act of God (as that term is known to the law) in the nature of an unprecedented windstorm.

The evidence showed that the building, of which the wall in question was a part, was located in Kansas City and was burned in July, 1901. In defendant's behalf it tended to show that some of the walls were left standing, which, with the exception of the one in question and a lower cross-wall, were torn down by the firemen, or other authorized persons. The wall in question, after the fire, was left supported in the following way: An interior wall ran to it from a large smokestack left standing, and at the corners, the other walls had been torn down in such way as to leave sloping supports. There was also evidence in defendant's behalf that competent persons, including city inspectors and his architect, considered the wall to be safe and that he, being a civil engineer himself, believed it to be safe.

There was, however, evidence in plaintiff's behalf that the wall was from twenty-eight to thirty-five feet high and that the interior wall running over to this wall from the smokestack was only six or eight feet high and that the corners were practically without support, and that the judgment of the architect and others was based on the wall being safe to use as a part of a reconstructed building, but not to leave standing alone. The evidence in plaintiff's behalf also tended to show

that the wind on the night the wall fell was not of extraordinary force and that although there were many other buildings nearby, frame and brick, high and low, yet none of them was blown down or injured. The evidence for defendant tending to show the extraordinary character of the storm related to its force in a different part of the city near two hundred feet higher than that part in which was this property. We therefore feel that the trial court did not err in refusing defendant's demurrer to the evidence.

We also think the trial court properly refused defendant's instructions numbered 2, 6 and 7. Numbers 2 and 6 amount to a peremptory instruction to find for defendant, if he was advised by the city officials and his architect that the wall was safe and he believed so. That was not a proper way to dispose of the question whether defendant was negligent. The question was one for the jury who were to judge of his conduct as measured by that of an ordinarily prudent man in the same circumstances.

Instruction numbered 7 as applied to the contest between the parties was liable to mislead. It declared "that the defendant had the legal right to have and maintain the wall in question upon his own property and that he was not an insurer of its safety, and if you find from the evidence that in maintaining such wall upon said property, he exercised such care as an ordinarily prudent person would exercise under the same or similar circumstances, your verdict must be for the defendant. As applied to the case, the effect of the instruction was that though the wall was in fact, unsafe and dangerous, yet defendant was not an insurer of its safety and he had a right to maintain it, if he exercised such care as an ordinarily prudent man would exercise, etc. The instruction would have been well enough if it had coupled the proposition of his right to maintain the wall with a proviso that it

was safe; or that he took every means to ascertain its safety that an ordinarily prudent man would have taken in similar circumstances and so believed it to be safe. The word "provided," immediately following "safety," would have been an appropriate connection between the portions of the instruction. Connecting the instruction by the word "and" instead of an appropriate word which would with more certainty qualify his right to maintain the wall, left it quite open to misconstruction and misunderstanding. It was properly refused.

Another complaint against the judgment is based on an objection to a juror. The point made is that the juror could neither read nor write. The statute (Laws 1905, p. 176, secs. 10, 11) on the subject of qualification of jurors in cities between one hundred and fifty and four hundred thousand population, is as follows:

"Sec. 10. None of the following persons shall be permitted to serve as jurors: 1st, any member of the militia or fire company; 2d, any person under the age of twenty-one years or over the age of sixty-five years; 3d, any person who is not sufficiently acquainted with the English language to read and write the same, and to understand thoroughly the proceedings ordinarily had in courts of justice; 4th, any person actually exercising the functions of clergyman, practitioner of medicine, druggist or apothecary, attorney-at-law, or any professor or other teacher of any school or institution of learning; 5th, any person of bad reputation or without any visible means of support; 6th, any person who has served on a regular panel as a juror in any court of record in the county within one year last past; 7th, any person who has been convicted of felony; 8th, any person not drawn or selected according to the provisions of this act.

"Sec. 11. Any party may challenge any juror for cause, for any reason mentioned in the last section,

and also, for any causes authorized by the laws of the State."

That statute further declares:

"Sec. 16.   This act, and each and all of the foregoing sections thereof, is mandatory, and not merely directory, and any officer who shall fail to perform any of the duties required by this act shall be deemed guilty of a misdemeanor, and shall, upon conviction, be punished by a fine of not less than fifty nor more than three hundred dollars."

The jury law of 1905, applicable to certain cities, only repeals the general statutes governing juries and jurymen in those instances where they are inconsistent. In other respects the general statutory provisions remain in force.   It is provided in section 3763 of the General Statutes of 1899, that, "No exception to a juror on account of his citizenship, non-residence, state or age, or other legal disability shall be allowed after the jury is sworn."   This section is not in conflict with, nor is it inconsistent with any of the provisions of the law of 1905 and therefore it must govern and control the objection now under consideration and the defendant having failed to inquire of the panel as to their qualifications before the jurors selected were sworn to try the case, cannot do so afterwards without directly violating the statute.

Uncontrolled by a statute like that last quoted there are authorities to be found in defendant's brief which support the idea that a party may safely assume that the proper officials have summoned only qualified persons for jury service; and that though he did not inquire of the panel, he may make the objection upon learning of the disability afterwards, in his motion for new trial.   It is not so in this State.   [Pitt v. Bishop, 53 Mo. App. 600; State v. Ross, 29 Mo. 52, 53.]   In the latter case it was said by Judge EWING, that "The policy of the statute is, doubtless, to promote fairness and im-

partiality of the jury trial; and while the statutory requirements would tend to subserve this purpose, still the absence of certain requirements according to that standard in a juror is not necessarily inconsistent with an impartial trial, and these requisites a party may waive. They are such as he may inform himself of; and when no question is made before the jury is sworn, he is presumed to have waived them." Any other rule would offer a premium on ignorance of the disqualification of a juror. A party would prefer to remain in ignorance so that if he obtains a verdict, well enough, but if he loses, he may then become active in search of knowledge of that he should and could have acertained before the trial. Failing to learn that which could have been known by the mere asking of a question, which the party had a right to ask, is tantamount to knowledge itself; in which case, the incompetency of the juror is, of course, waived.

Complaint is made of the trial court in admitting expert testimony as to the condition of the wall. The point of objection here is to the hypothetical question put to witnesses, Rowland and Williams. The record shows that in the attempt to examine Rowland several objections made by defendant were sustained whereupon plaintiff, in undertaking to meet the objections would add to his question. Finally the court suggested that it be again asked in a complete form, which was done. It was objected to as finally asked, but we think it was rightly held to be sufficiently comprehensive to be a proper question. A part of defendant's objection stated here, is that the question asked was whether the wall was "safe," instead of reasonably safe. The record shows each party using the word. But the objection now made was not among those made to the trial court. And, aside from that, the answer, with the explanations and conditions made by the witness rendered the evidence of no substantial importance. And we understand it to

be conceded by .defendant in his brief that no one (unless it was Williams, to be next noticed) gave testimony that the wall was not safe against all ordinary storms.

Williams was the other expert witness. The objection to the hypothetical question was in these words: "Defendant's counsel objected to the question as not a proper hypothetical question, omitting necessary essentials, and stating those that are not proven, incompetent, irrelevant and immaterial." The objection should have stated why the question was not proper, what necessary essentials were omitted and what it stated which were not proven. [O'Neill v. Kansas City, 178 Mo. 91, 100; Roe v. Bank, 167 Mo. 406, 422.]

We do not find that we have cause to interfere with the judgment and it is accordingly affirmed. All concur.