JOHN W. STEINMETZ, Appellant, v. J. C. NICHOLS, HERBERT V. JONES, and ROBERT W. CALDWELL, Individually, who collectively are University Trustees Under the Will of WILLIAM ROCKHILL NELSON, Deceased.—No. 38790.—180 S. W. (2d) 712.

Division One, May 2, 1944.

Rehearing Denied, June 5, 1944.

*Maurice J. O'Sullivan* and *Leo T. Schwartz* for appellant.

*Stanley Garrity* and *John W. Oliver* for respondents; *Caldwell, Downing, Noble & Garrity* of counsel.

1050

 DALTON, C.—Action for $25,000 damages for personal injuries sustained by plaintiff when, on account of alleged negligence of defendants, he fell into a below-ground-level portion of an areaway in the rear of a building controlled by defendants. Judgment was entered on a verdict for defendants and plaintiff has appealed.

The defendants were collectively "University Trustees" under the last will and testament of William Rockhill Nelson, deceased, and, as such Trustees, they owned the real estate (where plaintiff was injured) and managed and controlled it for the benefit of the Trust Estate.

A building on the described real estate contained five business places and some apartments. In the rear of the building was a common court or driveway for use of all the tenants. One of the business places was a grocery store. This store building had been lengthened by a ten foot extension and a small areaway or recess (open on the south) was left between the west side of the extension and the east and south sides (rear) of the original building. The east part of the areaway was divided by an east-west guardrail consisting of parallel iron pipes supported by uprights set in concrete. On the north side of the guardrail, the areaway was open down to the basement floor fourteen feet below the top guardrail. This opening was completely surrounded on the north and east by the building and extension and on the west and south by guard rails. South of the open areaway was a tract three and one-half feet north and south by six feet east and west, bound on the north by the guardrail (between it and the opening) and on the east by the outside west wall of the extension. On this wall a utility company had located four electric light meter boxes (meters for tenants of the building). A demand meter box was located just below the north one of these meter boxes. Other meter boxes were located on the south wall of the extension (all located where they could be examined from the ground outside the building).

Subsequent to the placing of the meter boxes on the outside wall of the extension, Earl Juul, the tenant who operated the grocery store, asked and was granted permission by defendants' rental agent to locate an electric refrigeration motor on the ground below the meter

boxes which were on the west wall of the extension. Other tenants complained of the noise of the motor and Juul enclosed his electric refrigeration motor in a kind of a box or shed and put a table top and some two inch boards over it to keep out the rain. These boards did not quite cover the box on the north, next to the iron fence and open areaway. The box or shed was about three by four feet and three feet high. One could walk in on the west side of the shed (two foot space) and there were a few inches of space between the shed and the guardrail on the north. The top of the shed was a little higher than this guardrail and there was nothing to keep one from falling off the top or roof of the shed and into the open areaway on the north. After the shed had been constructed and covered, meter readers climbed on top of the shed to read the meters.

In June 1941, plaintiff, a chart changer (meter man) employed by the utility company, came to change the chart on the demand meter above the shed. He climbed on the roof of the shed to reach the meter box and experienced no difficulty. About September, 1941, defendants' general maintenance janitor and repair man, whose duty it was to supervise and clean up the common court or driveway, secured the permission of Mr. Juul (groceryman) to change the top of the shed by moving some of the boards off and putting others on. He acted to satisfy complaints of another tenant's employees about a board extending out and interfering with the parking of bicycles. He took off the long board, which had caused the complaints, rearranged the top of the shed and put on some other material, referred to as plywood or crating, flimsy material, one-sixth or one-eighth inch in thickness and fastened on framing or panels. There were still some heavy boards over the shed, so that it felt solid, and a part of a table top could be seen under the flimsy material at the south end of the shed. On the north side of the shed, the flimsy material or plywood extended beyond the north wall of the shed and six inches to one foot out over the iron rail and open areaway. This extended material was not supported and, if weight were applied, it would give down. In order to see that there was nothing under this extended material one would have had "to walk around and look down under carefully." After exposure to the weather for about two months, this flimsy material buckled up, curled and appeared like a "corrugated box." It was weighted down on the shed top with bricks.

On the morning of November 1, 1941, plaintiff came again to change the chart on the demand meter above the shed. He first changed a chart on a demand meter on the south wall of the extension. From there, he could see a board or table top under the plywood or crating material on the shed and he could see the shed and its dimensions. From outside observation, the condition of the shed roof appeared little different from the way it did when he was there before. He made no particular inspection, but took it for granted that con-

ditions were the same. He could see that the top of the shed was "fiber boxing," but did not know what was under it, except the table top. He saw where the guardrail came over between the shed and the open areaway, but he noticed no infirmity of any kind in the top of the shed. He saw no warning signs, but did see the open areaway and paid no particular attention to how deep it was. He walked along the west side of the shed, until he was even with the north meter boxes, then he climbed upon the roof of the shed and moved east across the top of the shed to the demand meter box. He opened the box, changed the chart and closed the box. The bottom of the box was only about two inches above the top of the shed and, while on his knees on top of the shed facing east, he leaned forward, with his face nearly down to the shed roof, to see how to thread a little wire through the hasp in order to be able to seal the meter box. He was perhaps a little to the north of the meter box, near the north edge of the shed, using his right hand and he might have shifted his weight in having to move, when "all of a sudden the bottom gave away" and he fell down into the open areaway and was injured. "The roof gave away" and let him drop to the concrete floor on the basement level. Other facts will be stated in the course of the opinion.

Appellant contends that the trial court erred in giving Instructions G, H, I, and L at the request of defendants. Respondents deny these contentions, but insist that the court should have directed a verdict in their favor and that error, if any, in instructions is immaterial. Respondents contend that they are not liable in tort, either as individuals or as trustees of a charitable trust, and that, if they are liable in either capacity, the evidence fails to show any actionable negligence. In view of the conclusions we have reached with reference to the errors assigned, it will be unnecessary to determine the issues raised by respondents and to do so would unduly extend this opinion.

Instruction G is as follows: "The Court instructs the jury that the mere fact plaintiff fell and was injured on the premises belonging to the Trust Estate, if so, does not of itself make defendants liable to him in damages in this action, for you are instructed that defendant Trustees were not, and in this action cannot be held, as insurers of the safety of said premises for use by plaintiff."

Appellant says that "this is a case where an abstract instruction is reversible error" because misleading and prejudicial. The evidence showed that the meters belonged to plaintiff's employer; that they could be moved when inspectors deemed them inaccessible; and that plaintiff was receiving compensation payments on account of his injuries and for his medical and hospital expenses. Appellant contends that these facts, viewed with Instruction G, created a belief that plaintiff's employer was the sole insurer and defendants were relieved from all obligation to plaintiff. The instruction was in part

cautionary and in part abstract, but the giving of it was within the discretion of the trial court. Lewis v. Zagata, 350 Mo. 446, 166 S. W. (2d) 541, 544; Morris v. E. I. DuPont De Nemours & Co., 351 Mo. 479, 173 S. W. (2d) 39, 42; Raymond on Instructions Vol. I, Secs. 67, 127 and 214. In the case of Orr v. Bradley, 126 Mo. App. 146, 148, 103 S. W. 1149, 1150, the trial court's exercise of its discretion in refusing a somewhat similar instruction was approved. In Fisher v. Pullman Co., 212 Mo. App. 280, 254 S. W. 114, 116, an instruction using the words "not an insurer" was condemned for reasons not applicable here.

Instruction H is as follows: "The Court instructs the jury that there was no duty on defendants to post a warning sign or warn the plaintiff of the condition of the roof of the motor housing shed or the areaway if, in the exercise of ordinary care, the same were in plain sight and the danger thereof, if any, obvious to him."

Appellant contends that Instruction H was a vicious misdirection and conflicted with plaintiff's Instruction 1; that it mandatorily directed that defendants were under no duty to warn plaintiff of the *concealed* danger in the roof "if any kind of danger at all was obvious"; and that it wiped out defendants' superior knowledge of the dangerous condition of the roof and left no real basis for liability. The instruction was based upon evidence favorable to defendants tending to show that plaintiff saw the shed and the location of the railing adjacent on the north; that he knew part of the roof extended over the railing and areaway; that plaintiff saw the roof and climbed upon it; and that the roof "appeared rotten from weather" and "you could see plainly if anyone stepped on it, it would break."

Plaintiff's Instruction 1 required a finding that the roof of the shed was "unsafe and dangerous to persons required to go thereon and . . . that such condition . . . was unknown by plaintiff and was not apparent to him in the exercise of ordinary care." Recovery was sought on account of defendants' negligent failure "to warn the plaintiff of the danger of going" upon the insecure and insufficient roof of the shed and not for any failure of defendants to warn plaintiff of the open areaway of which he knew. Instruction H told the jury that there was no duty to warn plaintiff of the *condition* of the roof *or the areaway* "if . . . the same were in plain sight and the *danger thereof* . . . *obvious to him*." (Italics ours.) In so far as the case actually submitted was concerned, the words "or the areaway" were surplusage. However, the only danger referred to was the danger from the condition of the roof or the open areaway. The instruction properly required a finding of appreciation of danger by plaintiff before defendants could be relieved from the duty to warn of the condition of the roof of the shed or the areaway and did not merely require a knowledge of the physical conditions. Paubel v. Hitz, supra, (339 Mo. 274, 96 S. W. (2d) 369, 373);

State ex rel. First National Bank in St. Louis v. Hughes, supra. In so far as *either* the condition of the roof of the shed *or* the areaway were concerned, it required a finding on the facts against plaintiff's theory of a concealed and unknown trap. However, only a breach of the duty to warn of the condition of the roof was submitted by plaintiff as a basis for recovery. The instruction could have been in better form. In some respects it is ambiguous, but there is no contention that the instruction was prejudicial because ambiguous. The instruction did not conflict with instruction 1 and it was not erroneous on the basis assigned. Appellant further contends that there was no evidence that the danger from going upon the roof was obvious. In addition to evidence heretofore set out, a number of pictures were in evidence. They showed the roof, the shed and surrounding conditions. Considered most favorably to defendants, the evidence was entirely adequate to support the instruction. Moffett Brothers and Andrews Commission Co. v. Kent (Mo. Sup.), 5 S. W. (2d) 395, 402.

Instruction I is as follows: "The Court instructs the jury that if you find and believe from the evidence that plaintiff failed to look where he was working on the roof of the motor housing shed and got so close to the edge of said roof that the same gave way and he fell into the areaway, if you so find, and if you further find that by the exercise of ordinary care he saw or could have seen that to step or stand on the edge of the roof of said housing was dangerous and unsafe and he thereby failed to exercise the care which an ordinarily prudent person would have exercised under like or similar circumstances, and if you find that by reason of the foregoing plaintiff was negligent, and if you find that such negligence (if you find plaintiff was negligent) directly contributed to and helped to bring about the fall of which he complains, then plaintiff is not entitled to recover and your verdict must be for the defendants, even though you also find defendants were negligent."

Appellant attempts to consider Instructions H and I together, but one deals with the issue of defendants' negligence, while the other deals with the issue of plaintiff's contributory negligence. Appellant concedes the amended answer alleged "(a) that plaintiff negligently failed to observe where he was stepping while on top of the shed and (b) stepped on or close to the edge thereof in such a way as to cause him to fall and (c) failed to observe his whereabouts and where he was stepping and working on the shed and that the 'aforesaid negligence' directly contributed and helped to bring about his fall," but appellant insists there was no evidence of contributory negligence to support the instruction as given. Appellant contends there was no evidence that plaintiff had any knowledge, actual or constructive, of the defect or danger and that the instruction disregards plaintiff's testimony that the dangerous condition was unknown to him and not obvious.

The instruction, of course, does not purport to be based upon evidence most favorable to plaintiff and tending to show defendants' negligence in failing to warn, but it is based upon evidence and inferences favorable to defendants and tending to show that plaintiff was guilty of negligence which directly contributed to his injuries. It is apparent that, except for getting beyond the north wall of the shed and perhaps beyond the iron railing, plaintiff could not have fallen, as he testified, directly into the open areaway when the roof gave way. He admitted seeing the location of the guardrail and where it went under the roof on the north side of the shed. He saw the areaway and roof of the shed, including the "fiber boxing." The instruction was properly based upon such evidence and reasonable inferences therefrom and not upon the mere fact that plaintiff fell, as appellant contends. Attention is further directed particularly to the words "stepping" and "stepped" in the pleadings and "step, or stand" in the instruction, while appellant says the evidence showed plaintiff was on his knees. We think the evidence was entirely adequate to support a finding of contributory negligence as set out in the instruction. No jury would be misled even though the evidence showed plaintiff was moving about the roof on his knees. While the answer of defendants did not refer to the roof giving away, there was evidence that it did give way and the instruction required a finding that the giving away of the roof was due to plaintiff's negligence in getting so close to the edge of the roof, which was a reasonable inference.

Instruction L, dealing with the credibility of witnesses, included the following words: "You are not required as jurors or as men to accept as a fact the statement of any witness, if any, which you find contrary to the physical facts established by the evidence in the case and contrary to the general knowledge and experience of mankind, and it is your province to give the testimony of any witness just so much credit as you believe the same is entitled to at your hands."

Appellant says the instruction was prejudicial because it "comments upon and indicates that the court doubted plaintiff's evidence . . . The only purpose and effect, where all of the witnesses were offered by plaintiff, was to disparage plaintiff's evidence and create the impression that the court considered it dubious and warned against accepting it." Appellant further contends that the instruction excludes evidence not in conflict with physical facts and common observation; and that it advised the jury "they were not required to weigh or consider anything said by any witness if any statement was contrary to any physical fact." We think the instruction goes no further than to tell the jury that they were not required to accept as true any statement of a witness found to be in conflict with physical facts and common observation. There was no direction to disregard

the *entire* testimony of any such witness. Bryant v. Kansas City Rys. Co., 286 Mo. 342, 228 S. W. 472, 474; Mueller v. Schien, 352 Mo. 180, 176 S. W. (2d) 449, 455. The instruction is not a comment on or a disparagement of plaintiff's witnesses and there is no contention that the instruction was not warranted by the evidence.

The assignments of error, based upon the giving of the foregoing instructions, are overruled. The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.