[1] Plaintiff presented to the probate court of Jackson County a claim against the estate of Dora Boten, deceased, wherein she alleged that the estate was indebted to her in the sum of $4737.50, for services rendered the deceased in her lifetime. The plaintiff, Anna Borgman, is a niece of Dora Boten. A trial in the probate court resulted in a verdict for plaintiff for $1515. Plaintiff appealed to the circuit court where, upon a trial de novo before the court and a jury, the plaintiff recovered a judgment for $4587.50, from which the administrator duly appealed to this court. The issues in the case were whether there was a contract for personal services between the decedent and plaintiff, and if so, what was the reasonable value of the services rendered by plaintiff. Since the defendant does not contend that the evidence was insufficient to make a case for the jury, we do not deem it necessary to summarize all of the evidence. It is sufficient to say that the evidence relates principally to the deceased's health and the services plaintiff rendered, as well as to what was said on the subject of promises to pay for the services, and that the evidence on these issues was conflicting.
[2] Defendant's first point is that the "Trial Court erred in admitting the testimony of witnesses offered by Administrator, as to indebtedness claimed to be owing decedent at the time of her death." Three of defendant's witnesses referred to in this connection are Edward Boten, Oscar Boten, and Kirby Adams. Edward Boten testified on cross-examination, and without objection, that he had borrowed money from the decedent, Dora Boten; that she said: "I want you to take the money and keep it until I call for it, and if I never call for it you keep it"; and that neither the decedent nor her brother, John Boten, had ever requested him to pay the decedent the money that he had borrowed from her. The witness was then asked:
[3] "Q. You did give her a note, didn't you? A. Yes, sir.
[4] "Q. When was that? A. I forget the date now.
[5] "Q. Well, I think we have it here."
[6] At this point defendant's counsel said: "I am going to object, if your honor please, to his going into all this. Hesays she loaned him some money. I can't see the *Page 362 
purpose of all the detail he wants to know about, and I want to object to it
as incompetent, irrelevant and immaterial, consuming a lot of time." The objection was overruled. Thereafter, and without any further objection by defendant, the witness testified that on September 19, 1917, he borrowed $1200 from decedent and gave her a note for that amount due in one year with interest at 6%, and that he had never made a payment on the interest or principal. When Oscar Boten was cross-examined, his testimony, which was admitted without objection, tended to show that he was indebted to the decedent at the time of her death. Kirby Adams testified on cross-examination, and without objection, that he borrowed $80.00 from decedent and "paid it back a little at a time."
[7] It will be noticed that the only objection made by defendant was directed to a question asked Edward Boten. Where an objection is "squarely made" and the objection is overruled, it is unnecessary to repeat the objection when testimony of the same character by the same witness or by another witness is offered. Wooten v. Friedberg, 355 Mo. 756, 764, 198 S.W.2d 1, 6; State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 550,134 S.W.2d 58, 61, 124 A.L.R. 1331; Knaup v. Western Coal 
Mining Co., 342 Mo. 210, 227, 114 S.W.2d 969, 975; Hegberg, Adm. v. St. Louis San Francisco Railroad Co., 164 Mo.App. 514, 546, 147 S.W.2d 192, 204. Accordingly, if the defendant made a proper and timely objection to that part of Edward Boten's testimony of which defendant now complains, this court will rule upon the admissibility of testimony of the same character by Oscar Boten and Kirby Adams, as well as upon the admissibility of such testimony of Edward Boten, although defendant did not renew the objection. On the other hand, if defendant did not make such an objection, he cannot be heard to complain on appeal that the trial court erred in admitting the testimony in question. Therefore, the question presented is whether the defendant made a proper and timely objection to that part of Edward Boten's testimony which defendant now claims is inadmissible. The ruling on this point will dispose of defendant's contentions in regard to testimony of the same character by Oscar Boten and Kirby Adams.
[8] We do not believe that defendant's objection preserved for review the questions raised on this appeal. In the first place, the objection was not timely. Defendant complains that the trial court erred in permitting plaintiff's counsel to ask Edward Boten whether the decedent or John Boten had ever requested him to pay the decedent the money which he borrowed from her, and "to continue the same course" after defendant's objection was overruled. The record shows, however, that defendant did not object to these questions until after the witness had answered them. It does not appear that the defendant did not have time and opportunity to object before the answers were made. The questions were not misleading and the answers were responsive to the questions. Furthermore, the defendant did not move to strike out the answers. It is clear that defendant's objections, even if broad enough to include the points raised on appeal, came too late. See Cheffer v. Eagle Discount Stamp Co., 348 Mo. 1023, 1029, 156 S.W.2d 591, 594; Doherty v. St. Louis Butter Co., 339 Mo. 996, 1008, 98 S.W.2d 742, 749; Gately v. St. Louis-San Francisco Railway Co., 332 Mo. 1, 15, 56 S.W.2d 54, 69; Sullivan v. Union Electric Light Power Co., 331 Mo. 1065, 1082,56 S.W.2d 97, 104; Lanahan v. Hydraulic-Press Brick Co., Mo.App., 55 S.W.2d 327, 330. In the second place, the defendant's contentions and arguments on appeal are not within the scope of the objections made below. That part of the record quoted above shows that defendant did not object until plaintiff's counsel asked Edward Boten about the date of the note which he gave the decedent, and that the objection was directed to that question and not to the testimony complained of on appeal. Defendant does not now contend that the trial erred in permitting Edward Boten to testify to such details as the date of the note in question. He complains, as previously stated, that the trial court erred in permitting this witness to testify that he *Page 363 
had never been requested to pay decedent the money which he got from her. It is obvious, therefore, that the trial court did not have an opportunity to rule upon the points raised in this court. An appellant is not permitted to broaden the scope of his objection on appeal beyond that made in the trial court. Scott v. Mo. Pac. R. R. Co., 333 Mo. 374, 388, 62 S.W.2d 834, 839; State v. Weiss, Mo.App., 185 S.W.2d 53, 55; Woods v. Moffitt, 225 Mo.App. 801, 810, 38 S.W.2d 525, 530; Orr v. Bradley, 126 Mo.App. 146, 151, 103 S.W. 1149, 1151. For the reasons stated, the defendant's contention relative to the testimony of Edward Boten cannot be considered by this court. This ruling also disposes of defendant's complaint that the trial court erred in admitting certain testimony of Oscar Boten and Kirby Adams, as explained in the preceding paragraph of this opinion.
[9] Another witness referred to in connection with defendant's first allegation of error is Wesley Boten, who testified for defendant. Defendant objected to a certain question asked this witness on cross-examination. The objection was sustained and the witness did not answer the question. Defendant now asserts that the mere asking of the question was prejudicial. Since the defendant did not raise this point below by requesting the trial court to discharge the jury or to instruct the jury to disregard the question, the question involved is not reviewable on appeal. See cases cited above on this point.
[10] Defendant's second point is that the "Trial Court committed error in permitting claimant to refer to a transcript from a former trial in Probate Court `to refresh' claimant's husband's `recollection'." The deposition of plaintiff's husband was taken before the hearing in the probate court, and he also testified at the trial in that court. When he was called as a witness for plaintiff in the circuit court he testified, on direct examination, that during a certain conversation which he had with the decedent, Dora Boten, she said that plaintiff would be well paid for her services. On cross-examination the defendant's counsel, for impeachment purposes, read the testimony in the witness' deposition relating to the conversation in question, which testimony did not include the alleged statement of Dora Boten mentioned above. On redirect examination the witness was asked:
[11] "Q. You testified also when this case was tried in the Probate Court in April of this year; is that correct? A. That's right.
[12] "Q. I will ask you * * *."
[13] At this point defendant's counsel said: "I object to asking anything that he said at the trial as improper."
[14] "The Court: I take it that the purpose may be to explain the other testimony; overruled."
[15] Plaintiff's counsel continued: "In order to explain your testimony and refresh your recollection as to the particular questions * * * asked you with regard to conversations you had had with Dora, I will ask you if this was not your testimony (at the trial in the probate court), and do you remember that you testified that way * *."
[16] Plaintiff's counsel then read without objection part of the witness' testimony in the probate court which included statements to the effect that during the conversation mentioned above, Dora Boten said that plaintiff would be well paid for her services. The witness answered that he had so testified.
[17] Defendant contends that the trial court erred in permitting plaintiff to refer to a "transcript from a former trial in Probate Court `to refresh' claimant's husband's `recollection'," and he argues that a party does not have the right to refresh a witness' memory or to explain his testimony by reading his testimony at a former trial, "and especially the husband of claimant whose memory should need no refreshing"; that the witness' memory was not refreshed by the reading of his former testimony; that the former testimony did not explain anything; and that plaintiff "was merely bolstering up his witness by referring to a transcript of testimony not under question by cross-examination." In support of this argument the defendant quotes from the case of State v. Weiss, Mo.App., 185 S.W.2d 53, 55, as follows: "It is not good practice to offer a witness a paper from which to refresh his memory unless the witness' *Page 364 
memory is first shown to require refreshing * * *." But no such objections were made at the trial. As indicated above, the only objection made by defendant was as follows: "I object to asking anything that he said at the trial as improper." Because of the generality of this objection it is doubtful whether it was sufficient to preserve any question for review. See Gately v. St. Louis-San Francisco Railway Co., 332 Mo. 1, 15, 56 S.W.2d 54, 69. But apart from this, the objection was directed to questions concerning "anything that he said at the trial" and not to the witness' memory being refreshed or to any other point raised on this appeal. The record also shows that defendant did not object after plaintiff's counsel expressly stated that the purpose of the redirect examination was to explain the witness' testimony and to refresh his memory. As we have stated twice before in this opinion, this court cannot review questions which are not within the scope of the objection made at the trial. See Scott v. Mo. Pac. Railway Co., supra; State v. Weiss, supra; Woods v. Moffitt, supra; Orr v. Bradley, supra. This point is therefore ruled against defendant.
[18] Defendant's next point is that the trial court erred in giving plaintiff's Instruction 2, which is as follows: "The Court instructs the jury that under the law of this State, when one party to a contract is dead the other party is not permitted to testify except as to such facts and contracts as have been drawn or made since the appointment of the administrator, and that the plaintiff in this case, under the law, is not a competent witness to testify as to any acts or contracts between her and her aunt, if any, and would not be permitted to testify to such acts or contracts, if any were had or made, had she been offered as a witness." Defendant argues that this instruction was "an abstract statement, which did not properly state the law, and under the facts in this case was not proper if it had correctly stated the law," because the plaintiff in this case was not offered as a witness, so that no objection to her competency was made by defendant. Defendant says that the instruction does not take into consideration the right of defendant to waive the benefit of the so-called "dead man" statute, and that it "is possible, if not probable, that there would have been no objection" to plaintiff's testifying if she had been offered as a witness.
[19] In Love v. Richardson, Mo.App., 61 S.W.2d 220, 222, the St. Louis Court of Appeals held that the trial court did not err in giving an instruction identical with the instruction under consideration. In so holding the court followed its previous decision in the case of Miller v. Richardson, Mo.App., 56 S.W.2d 614, 618, where the plaintiff was not offered as a witness, as was the case here. In Whistler v. Bond, Mo.App., 87 S.W.2d 237, 240, the St. Louis Court of Appeals again held that there was no error in giving an instruction "advising the jury respecting the incompetency of plaintiffs to testify in their own behalf", citing the Miller case and the Love case with approval. All of these cases involved an action against an estate to recover the value of personal services alleged to have been rendered the deceased.
[20] Defendant attempts to distinguish the Miller case, supra, from the instant case, and also attacks the decision in the Miller case on the ground that the cases cited in that opinion do not support the ruling of the court. The case of Corbitt v. Mooney, 84 Mo.App. 645, decided by this court and cited in the Miller case, does lend some support to defendant's argument. However, we need not lengthen this opinion by analyzing and discussing all of the cases cited in the above mentioned decisions, for the question here presented has been ruled upon by our Supreme Court. In Brown v. Holman, 315 Mo. 478, 484,286 S.W. 36, 37, where the action, as here, was against an estate for the reasonable value of services rendered the deceased, the trial court gave the following instruction: "The court instructs the jury that the claimant, P. M. Brown, is incompetent to testify in his own favor, except as to such acts and contracts as have been done or made since the appointment of the administrator of the estate of Isaac Brown, deceased." The Supreme Court said, 315 Mo. loc. cit. 485, 286 S.W. 38: "While instruction D does not, in so many *Page 365 
words, charge that no unfavorable inferences are to be drawn from the fact that the plaintiff did not testify, that is its aim and purport, and, while we do not encourage the giving of such instruction in cases like the one at hand, we hold that the lower court did not commit error in the giving thereof." We are unable to distinguish this case from the case at bar. While the instructions in the two cases are not identical as to form, their meaning is the same. In the Brown case, as here, it appears that the plaintiff was not offered as a witness. There is nothing in the record in the instant case to show that plaintiff was a competent witness under the statute as to any of the facts in issue, Cf. Hayden v. Parsons, 70 Mo.App. 493, and defendant does not contend that he offered to waive any objection which he might have made to the competency of plaintiff if offered as a witness in her behalf. Although the language of the Supreme Court opinion casts some doubt upon the propriety of such an instruction, we must follow the ruling in that case and hold that the trial court did not commit reversible error in giving plaintiff's Instruction 2.
[21] Was the verdict excessive? The first period of plaintiff's claim runs from April 6, 1944 to November 13, 1945 (19 1/4 months), and is "for labor, care, nursing, attendance and domestic services," at $100 a month, making a total of $1925.00; the second period runs from December 16, 1945 to July 6, 1947 (18 3/4 months), and is for similar services rendered decedent during her last illness, at $150 a month, amounting to $2812.50; the total amount of the claim thus aggregating $4737.50. It appears that the decedent never married and was about sixty years old at the time of her death on July 6, 1947. She lived on a farm in Jackson County with her elderly, bachelor brother, John Boten. Plaintiff and her husband and children lived on the farm with decedent and her brother from about April 6, 1944 until decedent died. Plaintiff's evidence tends to show that decedent had a stroke before plaintiff went to the farm; that she was able to be "up and around" but could do no work; that her eyesight was bad; that on November 13, 1945, decedent broke her hip and was confined to a hospital for six weeks; that after she returned to the farm her eyesight became worse; that at times decedent could not control her bodily functions; that after her return from the hospital she was bedfast most of the time. The testimony was that plaintiff remained in attendance upon decedent day and night and "very seldom had an afternoon off"; that plaintiff fed and bathed decedent, prepared her food, gave her medicine, assisted her in and out of bed, at times took care of her calls of nature and changed the bed linen, did the washing, cared for the house, and shopped for provisions.
[22] Defendant's evidence tended to contradict the plaintiff's evidence as to the decedent's physical condition and the services plaintiff rendered, but in determining whether or not the verdict is excessive we must consider the evidence and inferences most favorable to plaintiff. Rinderknecht v. Thompson, Mo.Sup.,220 S.W.2d 69, 75; Henderson v. Dolas, Mo.Sup., 217 S.W.2d 554, 557. The jury's verdict was for $4587.50. Reducing this to a monthly basis for thirty-seven months' service, it amounts to approximately $124 a month. In view of the character of the services rendered, it cannot be said that the verdict is manifestly excessive. See Love v. Richardson, Mo.App., 61 S.W.2d 220.
[23] Finding no prejudicial error of record, the judgment should be affirmed.
[24] SPERRY, C., concurs.