243 S.W.2d 318 (1951)
JONES
v.
KANSAS CITY.
No. 42181.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*319 David M. Proctor, City Counselor, T. James Conway, Asst. City Counselor, and John J. Cosgrove, Asst. City Counselor, all of Kansas City, for appellant.
Harry L. Jacobs, Robert J. Coleman and J. M. Loomis, all of Kansas City, for respondent.
DALTON, Judge.
Action for $25,000 damages for personal injuries alleged to have been sustained on account of defendant's negligence. The cause was tried to a jury and a verdict returned for defendant, but the court granted a new trial on account of alleged error in the giving of instructions numbered 4, 5, and 6 requested by defendant. Defendant has appealed and contends there is no error in the instructions.
In view of the issues presented only a brief statement of facts is required. Plaintiff's evidence tended to show that, on the day plaintiff was injured, a water meter box, the property of defendant's water department, was located in the parkway between the sidewalk and the curb in front of 1019 Harrison street in said city. The meter box consisted of a buried upright tile which made a hole some 3 feet deep. It was covered with an iron band into which fitted a round iron lid 14 inches across weighing from 6 to 10 pounds. Some cement patch work surrounded the box and, on the south side, there was a depression in the parkway where the soil was washed away, leaving "a mean washed-out place * * * several inches below the level of the sidewalk, or curb, or the water cap lid."
On the morning of September 20, 1948, plaintiff parked her automobile at the curb adjacent to the parkway where the meter box was located. Plaintiff was familiar with the location of the meter box. She had seen the place lots of times. When she returned to her automobile near noon, the sun was shining. She noticed the meter box in the parkway directly in the line of her approach from the sidewalk to the right front door of her automobile. She "began to look for a place to stand to get into the car and selected the box." She looked at the meter box, it looked all right to her, *320 she didn't notice anything unusual about it, she didn't examine it closely, she looked down at it but did not see that the lid was tipped up on the west side and she selected it as a place to step. She reached out to unlock the automobile door and stepped on the lid with her right foot. The lid instantly tripped when she put her weight on it, turned sideways and her right foot and leg went down into the box so that her right knee struck the inside edge of the box and her left knee crumpled under her in a flexed position. Her right ankle was twisted and sprained and she suffered other injuries.
Plaintiff's evidence further tended to show that, on the evening before plaintiff was injured, an employee of defendant's water department came to the meter box and shut off the water because of a leak in a hydrant on the adjacent property. About 8 a. m., the following day another employee of defendant's water department came to the meter box and raised the meter box lid, looked in the box and put the lid back on again. About 10 a. m. on the same day, and before plaintiff was injured, still another employee of defendant's water department came to the water meter box, raised the lid, looked into the box and put the lid back over the hole, but didn't put it down so it would fit. After this last employee had left, a colored man, resident of the adjacent property and witness for plaintiff, who was seated some 15 feet away, observed that the top of the meter box appeared to be propped up on the west side, not over a half inch higher than the east side, but so you could see it was tilting a little bit. "It didn't sit up level like it naturally do when it is put into its place." He "seen it wasn't fit down like it had always been." He promptly went to plaintiff's aid when she fell and was injured.
Defendant's evidence tended to show that the last employee to visit the meter box read the meter therein and put the lid back on and stepped on it to test it and, when he left the lid was securely in place.
Plaintiff's cause was submitted on specific negligence, to-wit, the alleged negligent act of an employee of defendant in replacing and leaving the lid of the water meter box "in a loose, tilted and not firmly seated condition * * * so that it was liable to tilt when stepped upon, and * * * by reason thereof said lid was in a dangerous and unsafe condition for persons crossing said parkway and stepping upon said lid." See Hebenheimer v. St. Louis, 269 Mo. 92, 189 S.W. 1180, 1182.
Instruction 4, in part, states: "* * You should not find that the defendant was negligent from the mere fact of the occurrence shown by the plaintiff's evidence, if you find and believe from all of the evidence in the case that the defendant was not negligent, and if you do find and believe from all of the evidence in the case that the defendant was not negligent, then your verdict should be for the defendant."
Respondent's complaint of the instruction is that it is inconsistent and contradictory, because "the `occurrence' as shown by plaintiff's evidence fully proved negligence and such was the probative effect of the `occurrence' whether considered alone or together with the other evidence." Respondent says the word "occurrence" includes the things that occurred according to plaintiff's evidence and that "all of them collectively might be regarded as the occurrence."
Appellant contends that the most obvious meaning of the word "occurrence" is "plaintiff's fall and injury"; that "the word `occurrence' naturally suggests results as distinquished from cause, and is understood not to include cause"; that it could not have referred to the negligent tilting of the lid by the employee; that, by the wording of the instruction, "the negligent tilting of the lid by the employee was excluded from `occurrence'"; that "ambiguity is the most that can be made of respondent's criticism"; and that "reading all of the instructions together, no juryman would have understood that plaintiff should be denied recovery if defendant had left the lid in a tilting condition." Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S.W.2d 666, 669.
The word "occurrence" has been defined as that which occurs, an event, incident or happening. Webster's New International Dictionary, Second Edition. Plaintiff's evidence clearly showed four separate and *321 distinct happenings, events, incidents, or occurrences with reference to the meter box in question, to-wit, the detailed evidence concerning the visits of each of the three employees of defendant as well as plaintiff's act in stepping on the lid, her fall and injury. Two of the occurrences (the visit of the last employee and plaintiff's fall) were closely related as shown by the evidence (Taylor's testimony). "He come and raised the lid, too. * * * He looked down there, and he says, `This has been cut off, ain't it?' and I says, `Yes, a man cut that off yesterday evening.' Well, he pushed the lid back like that (indicating) and got in his truck and went off. * * * I noticed the lid wasn't fit down on it. It was propped up on the west side and lowered a little bit on the east side, the way it set on there, just a little bit, enough that you could see it. * * * Oh, not over a half an inch, if that. Just enough you could see it was tilting a little bit. * * * I seen a lady, * * * she come across the south of her car, come up the sidewalk just in front of me and started to open the door of her car and she fell right there. * * * I see her fell and I seen the lid was cocked up pretty much and one of her legs, I don't know which leg it was, was down in that hole, * * *."
The instruction did not specifically refer to plaintiff's fall and injury. The jury may well have thought the visit of defendant's last employee to the meter box, and his leaving the lid so that it would trip when plaintiff stepped upon it, was the occurrence shown by plaintiff's evidence and referred to by the instruction. It was this occurrence upon which plaintiff relied to show defendant's negligence. To tell the jurors that they should not find the defendant was negligent from the mere fact of this occurrence "shown by the plaintiff's evidence," if they found from all the evidence that the defendant was not negligent, would have been to submit a contradiction. An instruction is prejudicially misleading if it is liable to cause the jury to leave out of consideration some of the facts bearing on the issue of negligence. Orris v. Chicago, R. I. & P. R. Co., 279 Mo. 1, 214 S.W. 124, 127; Barr v. City of Kansas City, 105 Mo. 550, 557, 16 S.W. 483 (instruction on contributory negligence.) The giving of a somewhat similar instruction (No. 3) was approved in the case of Payne v. Carson, Mo.Sup., 224 S.W.2d 60, 62, but that case was submitted under the res ipsa loquitur doctrine, specific negligence was not involved and the objection here made was not presented or ruled.
Instruction 4 was ambiguous as appellant, in effect, concedes and whether or not it was misleading and prejudicially erroneous depends upon how it was considered by the jury. It is unnecessary to determine whether the giving of the instruction would have been reversible error had the motion for a new trial been overruled. The trial court apparently believed that under the facts and circumstances of this case the giving of the instruction was prejudicially erroneous. He sustained the motion for a new trial on the ground that he had erred in giving this and other instructions. We think the defects apparent in the instruction are sufficient to sustain the trial court's action. Morris v. E. I. DuPont De Nemours & Co., 351 Mo. 479, 173 S.W.2d 39, 42; Tennison v. St. Louis-San Francisco R. Co., Mo.Sup., 228 S.W.2d 718, 721(6-7).
Instruction 5 is, in part, as follows: "* * * You are further instructed that the mere fact, if it be a fact, that plaintiff was injured by stepping on the water meter box at the time and place mentioned in the evidence is, in itself, insufficient proof of any negligence on the part of Kansas City and would not, of itself, justify you in rendering a verdict in her favor in this case, but, on the contrary, plaintiff must, by her evidence, and all of the facts and circumstances introduced in evidence, prove that the defendant, Kansas City, was guilty of negligence as defined in these instructions."
Appellant says there is no error in the instruction. Respondent insists that this instruction "is erroneous because under the facts this is not a proper case for such cautionary instruction and also because in any event it exceeds in scope the legitimate bounds of such an instruction." Respondent says that the instruction is too broad; that, "it is one thing to caution in general *322 terms that the mere fact plaintiff was injured does not of itself establish defendant's negligence," but that, "it is quite another thing to particularize the injury, recite its details, and identify it as to time, place and manner * * * and then to instruct that that particular injury is not of itself proof of defendant's negligence." Respondent further construes the instruction as excluding from the jury's consideration on the issue of negligence any evidence relating to plaintiff's injuries.
Respondent in effect concedes that the instruction correctly states the law, when she admits that proof of "additional circumstances" were required to make out her case, to-wit, proof "that the meter box lid was tilted and that the defendant caused the condition." She further states that "one must prove not only (1) defendant's negligence, but (2) plaintiff's injury; and (3) causal connection between the negligence and the injury." Respondent says it is error to lift out one of the three links, to-wit, injury, and "to depreciate its efficacy as if it were standing alone." Respondent also contends the instruction unduly emphasizes caution and belittles plaintiff's injury. Respondent has listed particular cases (1) where this court has approved instructions to the effect that the mere fact that plaintiff was injured is no evidence that defendant was negligent and (2) cases where this court has disapproved such instructions, dependent upon the facts of the particular case. Moss v. Wells, Mo.Sup., 249 S.W. 411, 413; and Coffey v. Carthage, 186 Mo. 573, 585, 85 S.W. 532 are illustrative of the first group, while Orris v. Chicago, R. I. & P. R. Co., 279 Mo. 1, 214 S.W. 124 is illustrative of the second group. Respondent cites some sixteen cases under the first group and asks that these cases be overruled. We are not here concerned with either group of cases, since we have no such instruction for consideration in this case.
We think the case of Barr v. City of Kansas City, 105 Mo. 550, 557, 16 S.W. 483, on which respondent relies, has no application to this instruction. The instruction in that case dealt with two specific acts of the plaintiff, while this instruction deals not with an "isolated fact," by calling the jury's attention to it and giving it undue prominence or depreciation, rather it refers to an ultimate fact, an essential element of plaintiff's case, to-wit, the fact that plaintiff was injured, such ultimate fact was only one of the essential elements necessary to be proven to make out plaintiff's case.
In instruction 5 plaintiff's injuries, as such, are not referred to, but only the fact that plaintiff was injured at the particular time and place. The instruction does not advise the jury that plaintiff's injuries are no evidence on the issue of negligence. It does not even suggest that plaintiff's injuries, or the fact that she was injured, are not to be considered on the issue of liability. The instruction only tells the jury that the mere fact that plaintiff was injured is, in itself, insufficient proof of any negligence on the part of defendant. This was a correct abstract statement of law as respondent, in effect, concedes. A somewhat similar statement was included in the instructions condemned in the cases of Myers v. Independence, Mo.Sup., 189 S.W. 816, 823, and Walker v. Quincy, O. & K. C. R. Co., Mo.Sup., 178 S.W. 108, 109, 110, but that part of the instructions was not questioned in those cases. While instruction 5 was in part an abstract statement of law and in part cautionary, it was not erroneous in either respect. The giving or refusal of it was within the sound discretion of the trial court, but the giving of the instruction was not error. Whittle v. Thompson, 352 Mo. 637, 179 S.W.2d 22, 25; Nicholson v. Franciscus, 328 Mo. 96, 40 S.W.2d 623, 625; Sakowski v. Baird, 334 Mo. 951, 69 S.W.2d 649, 650; Steinmetz v. Nichols, 352 Mo. 1047, 180 S.W.2d 712, 714; Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, 544; Dove v. Atchison, T. & S. F. Ry., 349 Mo. 798, 163 S.W.2d 548, 552; Wilson v. Miss Hulling's Cafeterias, 360 Mo. 559, 229 S.W.2d 556, 559.
Instruction No. 6 was a verdict directing instruction as follows: "The Court instructs the jury that if you find and believe from the evidence that plaintiff at the time and place in question knew, or by *323 the exercise of ordinary care could have known, that the water meter lid mentioned in evidence was loose and tilted, in time to have stepped over or around the same in safety, by the exercise of ordinary care, but negligently failed to do so and was injured by reason of such failure, if any, then your verdict must be for the defendant Kansas City."
The instruction fails to submit a finding that plaintiff knew, or by the exercise of ordinary care could have known, that the lid was dangerous and unsafe for use by one in the exercise of ordinary care for his own safety. Appellant, however, contends the instruction was not erroneous because the condition mentioned, to-wit, that the lid was "loose and tilted" shows that the lid was "dangerous as a matter of law." This statement is based on the theory that "a tilting meter box lid is inherently dangerous." Appellant says that "an adult who knowingly steps upon a tilting meter box cover would be presumed to know the damage"; and that the instruction, as written, correctly declared the law.
Appellant makes no contention that respondent was guilty of contributory negligence as a matter of law, but concedes that she testified that the meter box cover looked safe to her before she stepped on it. She "didn't notice anything wrong with it." Her witness Taylor further testified: "I seen it wasn't fit down like it had always been, but I didn't have any idea that it would tip." The evidence showed that the lid had four small extensions, lugs or cleats on the under side, which were intended to fit down into the surrounding top of the meter box so as to make the lid secure. The jury could have inferred from the evidence that one or more of these lugs were not in place and so raised one side of the lid about a half inch higher than the other. The words used, to-wit, "loose and tilted," are very general terms. Assuming that "loose" meant not fastened (however, no witness testified that the lid appeared to be loose) and assuming that "tilted" meant not perfectly flat or level, as the evidence shows, still we cannot say that as a matter of law that the condition of the lid was such as to appear inherently dangerous to be stepped upon, or that the existing danger was open to observation by a pedestrian in the exercise of ordinary care. The character of the defect or condition shown by the evidence was not, as a matter of law, necessarily dangerous to a person exercising ordinary care for his own safety so that such a person in the exercise of ordinary care would not have attempted to step upon it. Knowledge of the defect or condition was not equivalent to knowledge of the danger.
Since the condition of the lid, as submitted by the instruction, was not so obviously and patently dangerous that we can say, as a matter of law, that an ordinarily prudent person would not have attempted to use the lid as a place to step, the instruction was clearly erroneous. The mere fact, as submitted by the instruction, that plaintiff "knew, or by the exercise of ordinary care could have known, that the water meter lid mentioned in evidence was loose and tilted" was insufficient to authorize a verdict for defendant. The instruction should have further required a finding that plaintiff knew, or by the exercise of ordinary care should have known that the defect or condition mentioned was dangerous and unsafe for use by one in the exercise of ordinary care for his own safety. Kiefer v. St. Joseph, Mo.Sup., 243 S.W. 104, 108; Cordray v. City of Brookfield, 334 Mo. 249, 65 S.W.2d 938, 939; Newberry v. City of St. Louis, 335 Mo. 1, 70 S.W.2d 546, 548; Butler v. City of University City, Mo.App., 167 S.W.2d 442, 446; King v. City of De Soto, Mo.App., 89 S.W.2d 579, 583; 63 C.J.S., Municipal Corporations, § 850(b), p. 200; 2 Restatement, Law of Torts, Sec. 466(a) and comment (c). Also, see, Heberling v. City of Warrensburg, 204 Mo. 604, 613, 103 S.W. 36, 38. The latter case was criticized in Ryan v. Kansas City, 232 Mo. 471, 477, 134 S.W. 566, but only one judge concurred with the writer of that opinion and two others concurred in the result. And see Sloan v. American Press, 327 Mo. 470, 37 S.W.2d 884, 888, where the obstruction and danger were both obvious.
*324 Since the trial court erred in giving Instructions 4 and 6, the motion for a new trial was properly sustained. The order granting a new trial is affirmed. It is so ordered.
All concur.